## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| GATE GUARD SERVICES, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action File |
| ) | No. 6:10-cv-91 |
| HILDA L. SOLIS, SECRETARY OF LABOR, ) | |
| UNITED STATES DEPARTMENT OF LABOR, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

COMES NOW Plaintiff, Gate Guard Services, L.P. ("GGS") and files this Complaint ("Complaint") against Defendant Hilda L. Solis, Secretary of Labor, United States Department of Labor ("Defendant"), stating as follows:

## INTRODUCTION

GGS brings this action against Defendant for entry of an Order providing that GGS is not subject to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. (the "FLSA") with regard to its contractors. Alternatively, if the Court determines that GGS is subject to the FLSA with regard to its contractors, GGS requests that the Court enter an Order that, pursuant to 29 U.S.C. §§ 206, 207, and 211, and 29 C.F.R. §§ 785.16, 785.19, 785.22, and 785.23, GGS is in compliance with the minimum wage, overtime, and record-keeping requirements of the FLSA, and that the sleep time, meal time and "waiting to be engaged" exceptions apply to GGS's contractors.

## PARTIES, JURISDICTION AND VENUE

1.

Plaintiff is a Texas limited partnership with its principal place of business at 4646 Corona Drive, #163, Corpus Christi, Texas 78411.

2.

Defendant is the Secretary of Labor for the United States Department of Labor, the federal regulatory agency that enforces the provisions of the FLSA.

3.

This Court has jurisdiction over this action pursuant to the FLSA, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedures Act, 5 U.S.C. § 701 et seq., and 28 U.S.C. § 1331.

4.

This Court has jurisdiction over the parties and subject matter of this case as set forth herein.

5.

This Court is empowered to render a declaratory judgment in this case pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the Administrative Procedures Act, 5 U.S.C. § 701 et seq.

6.

Defendant has issued a decision with respect to GGS's compliance with the FLSA, which constitutes final agency action authorizing GGS to seek a declaratory judgment pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 et seq.

7.

There is a dispute between the parties in this case with respect to GGS's compliance with the FLSA.  This dispute is an actual case or controversy for the purposes of the Federal Declaratory Judgment Act, and this Court is thus empowered to render a declaratory judgment respecting the future rights of these parties pursuant to 28 U.S.C. § 2201 et seq.

8.

Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**FACTS**

**GGS and Its Independent Contractors**

9.

GGS provides certain services to oil field operators.  Specifically, GGS contracts with individuals and/or entities (the "contractors") to log vehicles that enter and depart an oil field during drilling and production operations.

10.

When a vehicle enters or departs the oil field, the contractor is responsible for recording the driver's name, company name, license tag number, date and time in a Traffic Log.

11.

The Traffic Log is used for the purpose of identifying persons present at the oil field in the event of an emergency.  For example, if there is a safety emergency at the oil field, the site supervisor of an oil field operation will review the Traffic Log to determine whether all persons have been accounted for or if search and rescue teams should be engaged to locate missing individuals.

12.

The services provided by the contractors are limited to logging vehicles entering and departing an oil field operation.  The contractors are not engaged to perform any other service for GGS.

13.

GGS enters into a written Independent Contractor Agreement with each contractor who is assigned to an oil field operation where drilling and production is taking place.  Each contractor is paid between $100 and $175 per day.

14.

The contractors provide their own tools, equipment and supplies for the performance of their duties for GGS.  Specifically, each contractor provides his or her own recreational vehicle or camper, which is parked at the entrance of the oil field operation during the duration of the assignment.  The contractors reside and work from the recreational vehicle or camper which they provide.

15.

GGS provides only a generator and a septic tank for the contractors' use during an assignment.

16.

The contractors are permitted to hire and direct other individuals to log vehicles that enter and depart the oil field operation.  Many contractors hire and direct other individuals to perform this work.  Contractors may trade assignments with other contractors.

17.

GGS does not monitor or control the manner in which the contractors perform their work of logging in vehicles or any other task.  In fact, the only contact a contractor has with GGS during the course of an assignment is when GGS personnel service the septic tank approximately every week or every other week.  GGS provides no instructions to the contractors regarding the manner in which their work is performed.

18.

The length of the relationship between the contractors and GGS varies depending upon the type of oil field operation being performed.  Most contractors provide services for GGS for only a few months or part of a year.

19.

For each vehicle that enters and departs an oil field operation, the contractor spends approximately two minutes recording the vehicle information into a Traffic Log.  Once the vehicle is logged, the contractor returns to his or her personal pursuits.

20.

Depending on the activity at the oil field operation, sometimes no vehicles enter during a 24 hour period and the contractors perform no work at all.  Most contractors do not work more than two to four hours per day logging vehicles.

21.

The contractors engage in personal activities when not logging in vehicles during their assignments.  For example, contractors use the Internet, talk on the telephone, read, play board games or card games, entertain guests, watch television, complete household chores, and engage in other hobbies during the majority of the day when they are not logging vehicles.

22.

GGS does not place any restrictions on the contractors' personal or other activities.

23.

GGS requires that the contractors ensure that someone oversees the entrance to the oil field during the oil field operation in order to log vehicles entering or departing the oil field. Sometimes, oil field operations shut down during the evening.

24.

The contractors are able to sleep at least five to eight hours per 24-hour period.  Many contractors sleep for longer periods of time during a 24-hour period.

25.

The contractors are able to eat meals during an assignment from GGS, and have at least three (3) periods of uninterrupted meal times, which last at least 30 minutes each or longer.

## The Defendant U.S. Department of Labor's Investigation

26.

In or around September 2010, Defendant's Wage and Hour investigator, David Rapstine, initiated an investigation regarding the independent contractor classification of GGS's contractors.

27.

On or about October 4, 2010, Rapstine issued an oral opinion to GGS that Defendant considered GGS to be in violation of the FLSA.  Specifically, Rapstine found that GGS must classify its contractors as employees rather than independent contractors.  Rapstine further determined that the contractors must be compensated at the federal minimum wage for 24 hours for each day they are assigned to an oil field operation, with no deductions for sleep time, meal

time, or the time the contractors spend engaged in personal activities.  Rapstine calculated back wages owed by GGS to be $6,192,752 since July 2008.

28.

On November 10, 2010, Defendant's District Director in McAllen, Texas, Eden Ramirez, represented to GGS's Counsel, Annette A. Idalski, that Defendant determined that GGS is in violation of the FLSA on the grounds that GGS allegedly misclassified the contractors as independent contractors rather than employees.  (<u>See</u> Declaration of Annette A. Idalski ¶ 3, attached hereto as Exhibit A.)

29.

On November 10, 2010, Ramirez stated that litigation by the DOL was imminent because GGS refused to come into compliance with the FLSA by compensating its contractors for two years of back pay and classifying the contractors as nonexempt employees on a go forward basis. (<u>See</u> Declaration of Annette A. Idalski ¶ 4, attached hereto as Exhibit A.)

30.

On November 19, 2010, Ramirez, Michael Speer, Targeted Enforcement Coordinator and an attorney from Defendant's Office of the Solicitor, conducted a "final conference" with GGS representatives.  During the conference, Ramirez and Speer stated that Defendant had finished its investigation and had determined that GGS is in violation of the FLSA due to its alleged misclassification of the contractors as independent contractors rather than employees.  Ramirez and Speer further represented that Defendant is requiring GGS to classify its contractors as employees and to compensate the contractors as employees going forward in order to come into compliance with the FLSA.  Ramirez and Speer also stated that GGS must compensate its contractors at the federal minimum hourly wage for each 24-hour period in which the contractors

are assigned to an oil field operation because Defendant determined that the contractors are engaged to wait.  Defendant also found that GGS has violated the record-keeping requirements of the FLSA.  Finally, Ramirez and Speer stated that Defendant would seek to recover liquidated damages from GGS.  (See Declaration of Annette A. Idalski ¶¶ 6-7, attached hereto as Exhibit A.)

31.

At the November 19, 2010 final conference between GGS and Defendant, Ramirez and Speer stated that Defendant had "finished" its decision-making process and that an enforcement action against GGS by Defendant was imminent.  Ramirez and Speer further represented that GGS must immediately comply with Defendant's final decision and, in the presence of Defendant's attorney, stated that the file was being referred to the Office of the Solicitor and that the filing of a lawsuit against GGS was imminent.  (See Declaration of Annette A. Idalski ¶ 8, attached hereto as Exhibit A.)

32.

Defendant's determination that GGS is in violation of the FLSA affects the rights and obligations of GGS under the FLSA.

33.

Defendant's determination that GGS's contractors must be classified as employees, rather than independent contractors, and be compensated at the minimum hourly rate for 24-hour periods, is a final order from which legal consequences will flow against GGS unless challenged.

34.

Defendant's determination that GGS must compensate its contractors for back pay since July 2008, calculated at $6,192,752, is a final order from which legal consequences will flow against GGS unless challenged.

35.

Defendant's determination that GGS has violated the record-keeping requirements of Section 11(c) of the FLSA, 29 U.S.C. § 211(c), is a final order from which legal consequences will flow against GGS unless challenged.

36.

Defendant's determination that GGS owes liquidated damages is a final order from which legal consequences will flow against GGS unless challenged

**COUNT I**
**DECLARATORY JUDGMENT THAT GGS'S CONTRACTORS ARE PROPERLY**
**CLASSIFIED AS INDEPENDENT CONTRACTORS AND**
**ARE NOT SUBJECT TO THE FLSA**

37.

GGS incorporates by reference all allegations contained in Paragraphs 1 through 36 and re-alleges the same as if specifically pled herein.

38.

Pursuant to 29 U.S.C. § 206(a), only "employers" are required to pay "employees" the federal minimum wage.  Accordingly, independent contractors fall outside the scope of the FLSA and are not required to be compensated at the federal minimum wage.

39.

As set forth in Paragraphs 12 through 18 above, the contractors are not employees but instead are independent contractors of GGS pursuant to the "economic realities" test.  GGS

exerts no control over the performance of the contractors' duties.  The relationship between GGS and the contractors is not permanent.  The contractors supply their own tools, equipment and supplies for the performance of their duties.  The contractors may hire other individuals to log vehicles, thus allowing contractors the opportunity for profit and loss.

40.

Defendant has issued its final decision constituting final agency action that GGS is in violation of the FLSA and that GGS must classify its contractors as employees rather than independent contractors.

41.

Defendant also has found that GGS must compensate its contractors as employees and that it must pay back pay, calculated since July 2008, in the amount of $6,192,752.

42.

Defendant's decision is final and is ripe for adjudication by this Court.  There exists an actual case or controversy between GGS and Defendant as to GGS's rights and obligations under the FLSA.

43.

Accordingly, GGS requests that this Court enter an Order declaring that the contractors are properly classified as independent contractors and are not employees under the FLSA.

**COUNT II**
**DECLARATORY JUDGMENT THAT GGS HAS COMPLIED WITH THE MINIMUM**
**WAGE PROVISIONS OF THE FLSA**

44.

GGS incorporates by reference all allegations contained in Paragraphs 1 through 43 and re-alleges the same as if specifically pled herein.

45.

As set forth in Paragraph 13 above, the contractors are paid between $100 and $175 per day.

46.

As set forth in Paragraphs 19 through 21 above, the contractors spend approximately two minutes recording vehicle information into a Traffic Log for each vehicle that enters and departs an oil field operation. Depending on the activity at the oil field operation, sometimes no vehicles enter during a 24-hour period and the contractors perform no work at all. Most contractors do not work more than two to four hours per day logging vehicles. The contractors engage in personal pursuits during the majority of the day when they are not logging vehicles.

47.

Pursuant to Section 6 of the FLSA, 29 U.S.C. § 206, employees must be paid not less than the federal minimum wage for each hour worked, which currently is $7.25 per hour.

48.

The contractors are paid at or above the federal minimum hourly wage for each hour worked.

49.

Defendant has issued its final decision constituting final agency action that GGS is in violation of the FLSA and must compensate the contractors at the federal minimum hourly wage for 24 hours per day for each day they are engaged to log vehicles that enter and depart an oil field operation, regardless of the number of hours actually worked by the contractors during each 24-hour period.

50.

Defendant also has found that GGS must compensate its contractors for back pay in the amount of $6,192,752, calculated from July 2008, which includes payment for many hours over and above those actually worked by the contractors.

51.

Defendant's decision is final and ripe for adjudication by this Court.  There exists an actual case or controversy between GGS and Defendant as to GGS's rights and obligations under the FLSA.

52.

Accordingly, in the event the Court finds that the contractors are not independent contractors and are employees under the FLSA, GGS requests that this Court enter an Order declaring that GGS has complied with the minimum wage provisions of Section 6 of the FLSA, 29 U.S.C. § 206, because the wages paid to the contractors are in excess of the federal minimum wage for each hour worked by the contractors.

## COUNT III
## DECLARATORY JUDGMENT THAT GGS HAS COMPLIED WITH THE OVERTIME PROVISIONS OF THE FLSA

53.

GGS incorporates by reference all allegations contained in Paragraphs 1 through 52 and re-alleges the same as if specifically pled herein.

54.

As set forth in Paragraph 13 above, the contractors are paid between $100 and $175 per day.

55.

As set forth in Paragraphs 19 through 21 above, the contractors spend approximately two minutes recording vehicle information into a Traffic Log for each vehicle that enters and departs an oil field operation.  Depending on the activity at the oil field operation, sometimes no vehicles enter during a 24 hour period and the contractors perform no work at all.  Most contractors do not work more than two to four hours per day logging vehicles.  Therefore, the contractors do not work more than forty hours per workweek.

56.

Pursuant to Section 7 of the FLSA, 29 U.S.C. § 207, employees must be paid at a rate of not less than one and one-half times their regular rate for all hours worked in excess of forty hours per workweek.

57.

Defendant has issued its final decision constituting final agency action that GGS is in violation of the FLSA and must compensate the contractors at the federal minimum hourly wage for 24 hours per day for each day they are engaged to log vehicles that enter and depart an oil field operation, and that GGS must compensate the contractors at the rate of not less than one and one-half times the minimum wage for all hours worked in excess of forty hours per workweek (*i.e.*, 16 hours of overtime pay per day).

58.

Defendant also has found that GGS must compensate its contractors for back pay from July 2008, in the amount of $6,192,752, which includes payment for overtime pay.  Furthermore, Defendant calculated the back pay allegedly owed by GGS in violation of the two year statute of limitations under the FLSA.

59.

Defendant's decision is final and ripe for adjudication by this Court.  There exists an actual case or controversy between GGS and Defendant as to GGS's rights and obligations under the FLSA.

60.

Accordingly, in the event the Court finds that the contractors are not independent contractors and are employees under the FLSA, GGS requests that this Court enter an Order declaring that GGS has complied with the overtime provisions of Section 7 of the FLSA, 29 U.S.C. § 207, because the contractors have not and do not work hours in excess of forty per workweek.

### COUNT IV
### DECLARATORY JUDGMENT THAT CONTRACTORS ARE "WAITING TO BE ENGAGED"

61.

GGS incorporates by reference all allegations contained in Paragraphs 1 through 60 and re-alleges the same as if specifically pled herein.

62.

As set forth in Paragraphs 9 through 12 above, the contractors and GGS have agreed that the contractors are engaged only for the purpose of logging vehicles that enter and depart an oil field operation.

63.

Furthermore, as set forth in Paragraphs 21 and 22 above, the contractors are free to engage, and do engage, in personal activities when they are not logging vehicles that enter and depart an oil field operation.

14

64.

Pursuant to 29 C.F.R. § 785.16, the contractors are not working while engaged in their personal pursuits and their time spent engaged in personal pursuits is not compensable under the FLSA.

65.

Defendant has issued its final decision constituting final agency action that GGS must compensate the contractors at the minimum hourly wage for 24 hours per day for each day they are engaged to log vehicles that enter and depart an oil field operation, regardless of the amount of time contractors engage in personal pursuits during each 24-hour period, and that the contractors are "engaged to wait".

66.

Defendant also has found that GGS must compensate its contractors for back pay in the amount of $6,192,752, which includes time spent by contractors engaged in personal pursuits.

67.

Defendant's decision is final and ripe for adjudication by this Court.  There exists an actual case or controversy between GGS and Defendant as to GGS's rights and obligations under the FLSA.

68.

Accordingly, in the event the Court finds that the contractors are not independent contractors and are employees under the FLSA, GGS requests that this Court enter an Order declaring that the contractors are waiting to be engaged and that GGS must compensate the contractors at the federal minimum hourly wage only for the time the contractors actually spend logging vehicles that enter and depart an oil field operation.

## COUNT V
## DECLARATORY JUDGMENT THAT THE CONTRACTORS' SLEEP TIME AND MEAL PERIODS ARE NOT COMPENSABLE TIME WORKED

69.

GGS incorporates by reference all allegations contained in Paragraphs 1 through 68 and re-alleges the same as if specifically pled herein.

70.

As set forth in Paragraph 24 above, the contractors sleep at least five to eight hours per 24-hour period, and often sleep for longer periods of time.

71.

As set forth in Paragraph 25 above, the contractors are able to eat meals during an assignment, and have at least three (3) periods of uninterrupted meal times, which last at least 30 minutes or longer.

72.

Pursuant to 29 C.F.R. §§ 785.19, 785.22, and 785.23, the contractors' sleep and meal periods are not compensable under the FLSA.

73.

Defendant has issued its final decision constituting final agency action that GGS must compensate the contractors at the minimum hourly wage for 24 hours per day for each day they are engaged to log vehicles that enter and depart an oil field operation, regardless of the amount of time the contractors spend sleeping and eating during each 24-hour period.

74.

Defendant also has ordered GGS to compensate its contractors for back pay in the amount of $6,192,752, which includes sleeping and eating time.

75.

Defendant's decision is final and ripe for adjudication by this Court.  There exists an actual case or controversy between GGS and Defendant as to GGS's rights and obligations under the FLSA.

76.

Accordingly, in the event the Court finds that the contractors are not independent contractors and are employees under the FLSA, GGS requests that this Court enter an Order declaring that GGS is not required to compensate the contractors for at least 8 hours of sleep time and the contractors' bona fide meal periods in a 24 hour period.

## COUNT VI
## DECLARATORY JUDGMENT THAT GGS HAS COMPLIED WITH THE RECORD-KEEPING REQUIREMENTS OF THE FLSA

77.

GGS incorporates by reference all allegations contained in Paragraphs 1 through 76 and re-alleges the same as if specifically pled herein.

78.

As set forth above in Paragraph 10, when a vehicle enters or departs the oil field, the contractor is responsible for recording the driver's name, company name, license tag number, date and time in a Traffic Log.  Thus, the Traffic Logs record the time actually worked by the contractors.

79.

Pursuant to Section 11(c) of the FLSA, 29 U.S.C. § 211(c), employers are required to maintain certain records regarding an employee's wages, hours and other conditions and practices of employment.  GGS has complied with all provisions of the FLSA record-keeping requirements pursuant to Section 11(c) of the FLSA, 29 U.S.C. § 211(c).

80.

Defendant has issued its final decision constituting final agency action that GGS has violated the record-keeping requirements of Section 11(c) of the FLSA, 29 U.S.C. § 211(c).

81.

Defendant's decision is final and ripe for adjudication by this Court.  There exists an actual case or controversy between GGS and Defendant as to GGS's rights and obligations under the FLSA.

82.

Accordingly, in the event the Court finds that the contractors are not independent contractors and are employees under the FLSA, GGS requests that this Court enter an Order declaring that GGS is in compliance with the record-keeping requirements of Section 11(c) of the FLSA, 29 U.S.C. § 211(c).

## <u>COUNT VII</u>
## <u>DECLARATORY JUDGMENT THAT GGS HAS ACTED IN GOOD FAITH AND HAS NOT WILLFULLY VIOLATED THE FLSA</u>

83.

GGS incorporates by reference all allegations contained in Paragraphs 1 through 82 and re-alleges the same as if specifically pled herein.

84.

At all relevant times, GGS has relied upon federal statutes, federal regulations and opinions, and its own investigations, in determining that it is in compliance with the FLSA. Thus, pursuant to 29 U.S.C. § 260, GGS has acted in good faith and has reasonable grounds for believing that its practices do not violate the FLSA.  GGS has not willfully violated the FLSA, thus, the statute of limitations for commencing an action under the FLSA against GGS is two years after the cause of action accrued.

85.

Defendant has issued its final decision constituting final agency action that GGS owes liquidated damages.

86.

Defendant's decision is final and ripe for adjudication by this Court.  There exists an actual case or controversy between GGS and Defendant as to GGS's rights and obligations under the FLSA.

87.

Accordingly, in the event the Court finds that the contractors are not independent contractors and are employees under the FLSA, GGS requests that this Court enter an Order declaring that GGS is not required to pay liquidated damages under the FLSA and has not willfully violated the FLSA.

## COUNT VIII
## PRELIMINARY AND PERMANENT INJUNCTION

88.

GGS incorporates by reference all allegations contained in Paragraphs 1 through 87 and re-alleges the same as if specifically pled herein.

89.

Defendant's final determination that GGS has misclassified its contractors as independent contractors, that GGS is liable for back pay totaling $6,192,752, that GGS must immediately classify the contractors as employees and compensate them at the federal minimum wage for 24 hours per day, that GGS has violated the record-keeping provisions of the FLSA, and that GGS owes liquidated damages, as set forth in Paragraphs 27 through 31 above, has immediate adverse legal consequences for GGS.

90.

GGS does not have an adequate remedy at law to protect its legal rights under the FLSA, making an injunction proper against Defendant.  GGS will suffer irreparable harm if Defendant is not prevented from attempting to enforce its final determination that GGS has violated the FLSA.

91.

Defendant should be enjoined from attempting to enforce its final determination against GGS.

## <u>COUNT IX</u>
## <u>ATTORNEYS' FEES AND COSTS</u>

92.

GGS incorporates by reference all allegations contained in Paragraphs 1 through 91 and re-alleges the same as if specifically pled herein.

93.

Defendant's final determination that GGS has misclassified its contractors as independent contractors, that GGS is liable for back pay totaling $6,192,752, that GGS must immediately classify the contractors as employees and compensate them at the federal minimum wage for 24

hours per day, that GGS has violated the record-keeping provisions of the FLSA, and that GGS owes liquidated damages, as set forth in Paragraphs 27 through 31 above, is not substantially justified and is contrary to the law and facts of this case.

94.

Defendant requests that the Court award to GGS its reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

WHEREFORE, GGS respectfully requests the following relief:

a.  That this Court enter an Order declaring that the contractors are properly classified as independent contractors and are not employees under the FLSA;

b.  That, if the Court enters an Order finding that the contractors are not independent contractors and are employees under the FLSA, that this Court enter an Order declaring that GGS has complied with the minimum wage provisions of Section 6 of the FLSA, 29 U.S.C. § 206.

c.  That, if the Court enters an Order finding that the contractors are not independent contractors and are employees under the FLSA, that this Court enter an Order declaring that GGS has complied with the overtime provisions of Section 7 of the FLSA, 29 U.S.C. § 207.

d.  That, if the Court enters an Order finding that the contractors are not independent contractors and are employees under the FLSA, that this Court enter an Order declaring that the contractors are "waiting to be engaged" and that GGS must compensate the contractors at the federal

minimum hourly wage <u>only</u> for the time the contractors actually spend logging vehicles that enter and depart an oil field operation;

e. That, if the Court enters an Order finding that the contractors are not independent contractors and are employees under the FLSA, that this Court enter an Order declaring that GGS is not required to compensate the contractors for at least 8 hours of sleep time and bona fide meal periods during an assignment;

f. That, if the Court enters an Order finding that the contractors are not independent contractors and are employees under the FLSA, that this Court enter an Order declaring that GGS has complied with the record-keeping provisions of Section 11(c) of the FLSA, 29 U.S.C. § 211(c);

g. That, if the Court enters an Order finding that the contractors are not independent contractors and are employees under the FLSA, that this Court enter an Order declaring that GGS has acted in good faith pursuant to 29 U.S.C. § 260, that it is not required to pay liquidated damages, and that it has not acted willfully in violation of the FLSA;

h. That the Court enter an Order preliminarily and permanently enjoining Defendant from attempting to enforce its final determination that GGS has misclassified its contractors as independent contractors, that GGS is liable for back pay totaling $6,192,752, that GGS must immediately classify the contractors as employees and compensate them at the federal minimum wage for 24 hours per day, that GGS has violated the record-keeping provisions of the FLSA, and that GGS owes liquidated damages.

    i.      That this Court award to GGS its reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, because Defendant's final determination that GGS has misclassified its contractors as independent contractors, that GGS is liable for two years of back pay totaling $6,192,752, that GGS must immediately classify the contractors as employees and compensate them at the federal minimum wage for 24 hours per day, that GGS has violated the record-keeping provisions of the FLSA, and that GGS owes liquidated damages, is not substantially justified under the law; and

    j.      That this Court award such other and further relief as it deems just and proper.

This 19th day of November, 2010.

**CHAMBERLAIN HRDLICKA**
**WHITE WILLIAMS & MARTIN**

By:  s/ Daniel D. Pipitone_____
        Daniel D. Pipitone
        Texas Bar No. 16024600
        Federal I.D. 0294
        1200 Smith Street
        14th Floor
        Houston, TX 77002-4310
        Telephone: (713) 654-9670
        Facsimile:  (713) 356-1070

*Attorneys for Plaintiff Gate Guard Services, L.P.*