UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **GATE GUARD SERVICES, L.P.** | § | |
| **and BERT STEINDORF,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:10-cv-00091** |
| | § | |
| **HILDA L. SOLIS, Secretary of Labor,** | § | |
| **United States Department of Labor,** | § | |
| | § | |
| *Defendant*. | § | |

## SECRETARY'S RESPONSE OPPOSING PLAINTIFFS' MOTION TO BIFURCATE AND STAY DISCOVERY AND RE-URGING THE SECRETARY'S MOTION TO DISMISS THE AMENDED COMPLAINT

Hilda L. Solis, Secretary of Labor, United States Department of Labor, respectfully submits this opposition subject to and without waiving the Secretary's Motion to Dismiss the Amended Complaint for, among other reasons, lack of subject matter jurisdiction, which is currently pending before the Court.  The Secretary respectfully re-urges her Motion to Dismiss the Amended Declaratory Judgment Complaint and respectfully requests that the Court enter an order dismissing this declaratory judgment action for all of the reasons discussed in the Secretary's Motion to Dismiss.  Dismissal of this amended declaratory judgment action would efficiently streamline this litigation, which can and should be pursued in the Secretary's encompassing enforcement action pursuant to the Fair Labor Standards Act, *Hilda L. Solis, Secretary of Labor v. Gate Guard Service, L.P., DBA Gate Guard Services, Bert Steindorf and Sidney L. Smith*, C.A. File No. 6:11-cv-14, the "FLSA Enforcement Action."

1

The Secretary requests that the Court deny GGS's[1] motion to bifurcate and stay certain discovery because such a bifurcation and stay would result in expensive and wasteful duplicative discovery of overlapping facts and issues, unfairly burden the witnesses with double depositions, prejudice the Secretary from establishing her prima facie case in the FLSA Enforcement Action and her "defenses" in this amended declaratory judgment action, and encourage continuing discovery disputes that would waste judicial resources.

## I.     INTRODUCTION

Judicial economy will not be served in this case by bifurcating discovery between the liability and damages portions of the FLSA Enforcement Action.  The Secretary notes at the outset that in this Declaratory Judgment Action, the Secretary is a Defendant and as such cannot be awarded backwages (damages) in this action, but that the Secretary is seeking backwages in her FLSA Enforcement Action.

GGS's proposal for a stay of discovery regarding "damages" omits that the "damages" are backwages, which include facts concerning the GGS guards' required work schedules, hours worked, original and subsequent pay rates, kinds of work performed, initial rates of pay, subsequent rates of pay, deductions from pay, durations of employment, and total wages paid to the affected GGS guard employees, all of which are relevant to both liability *and* damages.

---

1 The three Defendants in the FLSA Enforcement Action, C.A. No. 6:11-cv-14, Gate Guard Services, L.P. (the "Company"), Owner Bert Steindorf, and Manager Sidney L. Smith and the two Plaintiffs in this Amended Declaratory Judgment Action (the "Amended DJ Action"), the Company and Steindorf, double-captioned their Motion To Bifurcate Discovery, although the cases are not consolidated.  The Secretary opposes such consolidation, as explained in the Secretary's response opposing consolidation, filed in this action. Accordingly, the Secretary has not double-captioned this Response.  "GGS" herein collectively refers to the two Plaintiffs in this action and the three Defendants in the FLSA Enforcement Action.

Thus the facts, and therefore discovery, as to whether the gate guards are GGS's employees, are inextricably intertwined with the facts, and therefore discovery, regarding the GGS guards' required work schedules, hours worked, original and subsequent pay rates, kinds of work performed, deductions from pay, durations of employment, and total wages paid, which are all also relevant to the issue of backwages.  Because the facts will overlap these issues, and because the same individuals will have to provide testimony regarding these overlapping facts, GGS's proposed discovery stay will inevitably lead to duplicative discovery and increased expense. Bifurcation and partial stay of discovery also would unduly burden the employee and other witnesses, who would have to be deposed twice, in both "phases" of discovery proposed by GGS.

Moreover, GGS admits that another group of affected employees, their security guards, are its employees.  There is no independent contractor/employee issue regarding those employees.  Facts and therefore discovery concerning the actual hours worked by the security technicians goes to the heart of GGS's overtime liability regarding those employees, because GGS's defense is that they paid the service technicians for all hours they actually worked.  Again, the facts concerning liability and backwages due will overlap, and again, the same individuals will have to provide testimony regarding these facts, so that the proposed discovery stay will inevitably lead to duplicative discovery, increased expense and unfairly burden the witnesses.

The artificial bifurcation and stay of certain discovery would prejudice the Secretary from obtaining the evidence necessary for her prima facie case in the FLSA Enforcement Action on several other claims.  The Secretary alleges, and the individual defendants in the FLSA

Enforcement Action deny, that they are employers under the Act.[2]  Whether or not these

individuals are employers under the Act turns in part on their involvement in GGS's payment

practices regarding their guards and service technicians, including their guards' required work

schedules, the determination and payment of their original and subsequent pay  rates,

determinations of deductions, and the total wages that GGS paid to the guards and the service

technicians.  GGS also denies that it is an enterprise under the Act.  Again, the facts and

discovery regarding these issues will overlap the facts and discovery regarding the backwages

due to the guards – the "damages" issues.

The Company and its Owner Steindorf have denied virtually every allegation in the

Amended Complaint in the FLSA Enforcement Action and have raised twenty-three (23)

affirmative and "additional defenses."  Without burdening the Court with an exhaustive analysis

of each of these denials, affirmative defenses and "other defenses," some if not all of them

encompass and overlap the facts regarding the required work schedules, hours worked by the

guards and their original and subsequent rates of pay, durations of employment, pay deductions

and the actual wages that GGS paid them, again requiring duplicative, expensive, burdensome

and prejudicial double discovery from the same witnesses.

In short, GGS has failed to bear its burden of establishing that the motion to bifurcate

discovery should be granted, and the motion to bifurcate discovery should be denied.

## II.    FACTS

The U.S. Department of Labor, Wage and Hour Division ("WH") initiated an

---

2  On April 22, 2011, Defendant filed his Answer, and Defendant Smith filed his  Motion to
Dismiss, in the FLSA Enforcement Action.

investigation into the compensation and recordkeeping practices of GGS.   In the investigation underlying the instant action, WH found overtime, minimum wage and recordkeeping violations of the FLSA regarding more than 330 guards employed by GGS, whom GGS misclassified as independent contractors.

WH also found overtime and record keeping violations of the FLSA regarding GGS's salaried, non-exempt service technicians who assisted GGS's guards.  Specifically, the investigation revealed that GGS's service technicians' estimated hours worked varied from 44 hours per week to 96 hours per week. GGS admits that the salaried service technicians are its employees.  Thus, the issues with respect to the service technician employees are their actual hours worked, whether GGS kept records of their actual hours worked, whether GGS paid them for their actual hours worked, and the amount that GGS failed to pay them for their actual hours worked.

In GGS's Motion to Bifurcate Discovery, GGS asks that discovery be restricted to issues "relating solely" to the guards' "status as independent contractor employees."  GGS argues that the parties then "may promptly seek a ruling and, if needed, proceed to discovery on damages (i.e., the amount of backwages and overtime due the [guards], if any)."  GGS suggests that limiting discovery in this way would minimize litigation costs for all parties.  Any claim that the proposed limitation on discovery would result in a savings in time and expense, and would not prejudice the Secretary or unduly burden the subject guard and service technician employees, is inaccurate.

## III.    ARGUMENT AND AUTHORITIES

### A.    Legal Standard

Whether GGS's Motion to Bifurcate Discovery is viewed through the lens of Federal Rule of Civil Procedure 42(b) (as the Motion appears to argue) or of Rule 26(c),  GGS cannot bear its burden to establish that this Court should enter an order prohibiting the Secretary from initially obtaining discovery into the guards' required hours worked, actual hours worked, rates of pay, increases in rates of pay, deductions from pay, duration of employment, and the wages GGS paid its guards, all encompassed by the "damages" issues and facts.

Federal Rule of Civil Procedure 42(b) governs bifurcation of trials (but not of discovery) of one or more separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed.R.Civ.P. 42(b).  The decision to bifurcate a trial centers on a balance of equities, which is weighted against bifurcation. *Houseman v. United States Aviation Underwriters*, 171 F.3d 1117, 1121(7th Cir. 1999). *See also Swofford v. B & W, Inc.,* 336 F.2d 406, 415 (5th Cir. 1964), *cert. denied* 379 U.S. 962 (1965) (the normal lawsuit seldom requires a separate trial of the issues).  The party seeking separate trials has the burden of proving that separation of the case is necessary.  9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 (2008). *See, e.g., Bonner v. Chambers County,* 2006 WL 1731135 (M.D.Ala. 2006)*; Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D.Ill. 2000). The Fifth Circuit has cautioned that a court should not bifurcate claims unless the issue to be tried separately is "so distinct and separate from the others that a trial of it alone may be had without injustice." *McDaniel v. Anheuser-Busch, Inc*., 987 F.2d 298, 305 n. 22 (5th Cir. 1993)

(citations omitted).

Federal Rule of Civil Procedure 26(c) governs protective orders staying discovery, which is the relief GGS seeks in its Motion To Bifurcate Discovery, and is the essence of GGS's Motion. Under Rule 26(c), a protective order staying discovery may be issued only "for good cause" in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party moving for the protective order bears the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir.1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978); citing 8 Wright & Miller § 2035, at 483-86 (2d ed.1994)).

Whether GGS's Motion is governed by Federal Rule of Civil Procedure 42(b) or 26(c), GGS bears the burden of showing that entry of such a motion would protect against "undue burden or expense" or be "[f]or convenience, to avoid prejudice, or to expedite and economize."[3] GGS has not and cannot bear this burden.

**B.    Bifurcation Would Result in Duplicative Discovery Because the Issues and Facts Overlap.**

There is substantial overlap between the facts related to the issues that GGS seeks to bifurcate (whether or not the guards are employees or independent contractors on the one hand,

---

3 GGS cites to *Beattie v. Madison County School District*, 254 F. 3d 595, 606 (5ᵗʰ Cir. 2001), which has nothing to do with bifurcation and stay of discovery. GGS's Motion at 7. Instead, in *Beattie* the court affirmed the district court's denial of the plaintiff's motion to take additional discovery under Federal Rule of Civil Procedure 56(f). In that case, the plaintiff had voluntarily suspended discovery to pursue settlement. Here, of course, the Secretary *opposes* the suspension and stay of discovery proposed by GGS's motion, which in any event does not involve or address Rule 56(f) in any way.

and the guards' required work schedule, hours worked, rates of pay, changes in rates of pay, pay deductions, duration of employment, total wages paid, on the other hand), as well as significant overlap with the facts related to other issues in the case, including the employer status of Bert Steindorf and Sidney Smith, and enterprise coverage.  Thus a partial stay would result in duplicative discovery and wasted resources.

To determine employee status of alleged independent contractors under the FLSA, the Fifth Circuit focuses on whether the alleged independent contractor, as a matter of economic reality, is economically dependent on the alleged employer or instead is in business for himself. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (citing *Herman v. Express Sixty-Minute Delivery Service, Inc.*, 161 F.3d 299, 303) (5th Cir. 1998) (citing *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043, 1054 (5th Cir. 1987)).

To aid in the inquiry, the Fifth Circuit considers five non-exhaustive factors:  (1) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (2) the degree of control exercised by the alleged employer; (3) the extent of the relative investments of the worker and the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.  *Id.* (citations omitted).  None of these factors is dispositive of the issue in and of itself, and the overall inquiry is "to determine whether the employee is, as a matter of economic reality, in business for himself or herself."  *Id.* (citations omitted).  Facts regarding these "liability" elements for the employee/independent contractor issues overlap the facts regarding "damages" backwages issues, including GGS's guards' required work schedules, hours worked, original and changing pay rates, pay deductions, and the total wages that GGS paid its guards.

8

As but one illustrative example, based on the information gathered during the investigation, as a matter of economic reality GGS's guards were economically dependent on GGS because GGS required them to work 24 hours a day, 7 days a week, which effectively prevented GGS's guards from running their own independent businesses. The facts and discovery regarding this required work schedule overlaps the facts and discovery regarding the hours worked by the guards, and are relevant to both their status as employees – "liability"  and backwages – "damages."

The facts concerning GGS's determination of their guards' opportunity for profit and loss also overlap the hours worked and rate of pay, since GGS required that their guards work 24 hours a day, 7 days a week and paid them a flat, GGS-determined daily rate.  Nevertheless, one of GGS's defenses is that the guards theoretically could have earned a profit and loss because they could purportedly "hire" another person to work their assignments and pay such persons out of their GGS wages.  The facts concerning GGS's' asserted  theoretical opportunity for profit and loss overlap the facts concerning the daily flat rates imposed on the guards by GSS, which is relevant to discovery concerning backwages - damages.  A GGS guard earning $100 per day for 24 hours of work only earned $4.16 per hour, far less than the minimum wage.  Even if credited with 16 hours of work, such a GGS guard earned only $6.25 per hour, less than the minimum wage.[4]  Whether any of GGS's guards could and did earn a "profit" by paying a substitute person

---

4  The current and preliminary backwages calculations provided in the Secretary's initial disclosures show that the Secretary has subtracted at least 8 hours for sleep and meal times from every 24-hour period each GGS guard was required to work.  These backwage calculations are not final, because additional information obtained during discovery likely will cause the backwages to change.  As one example, GGS has refused to come into compliance with the FLSA, and to date GGS has not provided the Secretary with updated payroll information.  Updated payroll information may reveal additional affected employees and additional minimum

from the guards' less-than-minimum GGS wages, is relevant to both the "profit and loss" liability element and the backwages due any such guard.

Thus the facts, and necessarily discovery, concerning the "economic reality" and the "opportunity for profit and loss" elements of the independent contractor/employee test overlap the facts, and necessarily discovery, regarding the backwages due GGS's guards.

Similarly, the facts, and thus discovery, regarding the "control" element of the independent contractor test overlap the facts, and thus discovery regarding GGS's guards' required work schedules, hours worked, original and subsequent daily rates, payment practices, duration of employment and total wages that GGS paid to them, including GGS' updated payroll records.  The investigation revealed that GGS exercised unilateral control over the wages, hours, and work performed by the guards for GGS's benefit, when GGS, for example:

- unilaterally issued their guards GGS's guarding assignments and guarding re-assignments;

- required their guards to staff the guarding sites 24 hours a day, 7 days a week;

- required their guards to record the entry and exit of every vehicle to the guarding site 24 hours a day, 7 days a week;

- unilaterally set their guards' initial daily wage rates, refusing to negotiate for same;

---

wage and overtime violations, which would change the backwages.  **The updated payroll information will also reveal facts that are relevant to liability issues, including GGS's guards' duration of employment, pay rates, increases in pay rates, wages paid, deductions, terminations, and even the identity of GGS guards not currently known to the Secretary.**

- unilaterally gave some guards rate increases, refusing to negotiate for same;

- required that their guards apply for and receive Texas State non-commissioned security officer certification under GGS's sponsorship as a condition of employment;

- required them to wear GGS-provided uniforms;

- required them to affix large stickers/signs containing GGS's name and security company license number to the trailers at the guarding sites; and

- supplied, re-supplied and installed their guards' essentials of daily living at the remotely located guard sites, including their water, electricity via portable generators, diesel fuel needed to run the generators, halogen lights used to illuminate the gates and trailer exteriors, and the air bells and cables used to alert the guards of every vehicular entrance and exit at the guarding sites.

Discovery regarding these "control" facts, and related "control" facts regarding who paid for the GGS uniforms, GGS emblems, and the guards' certification fees, and whether these costs and the costs for other GGS-provided equipment were deducted from GGS's guards' wages, which are also relevant to the "relevant investment" liability element, overlap facts and discovery regarding the calculation of backwages.

Likewise, the facts, and therefore discovery, regarding GGS's guards' "duration of employment" liability element overlap with the "damages" facts regarding hours worked, since duration of employment goes into the backwages calculus.  In fact, the investigation revealed that some of the guards worked for GGS for two years or more.

In addition to the employee/independent contractor "liability" issues, the issue of Bert Steindorf's and Sidney Smith's employer status under the FLSA is disputed, and is intertwined with GGS's pay practices, including but not limited to the guards' required work schedules, hours worked, initial and changed pay rates, and pay deductions.  The Act defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).   Managerial responsibilities and substantial control of the terms and conditions of the work create statutory employer status.  *Falk v. Brennan*, 414 U.S. 190, 195 (1973). To determine whether a party qualifies as an employer, the Fifth Circuit looks to the "economic realities" of employment.  *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984).  The economic realities test examines whether the individual employer: "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984). Accordingly, evaluation of whether Bert Steindorf and Sidney Smith are considered employers under the FLSA necessarily includes the terms and conditions of work, as well as compensation and employment records such as payroll records, which are the same facts and records relevant to backwages ("damages") regarding the guards.

Enterprise coverage is another disputed issue. The issue of enterprise coverage is also intertwined with GGS's guards' backpay issues. Enterprise coverage exists under Section 3(s)(1)(A) of the FLSA for any enterprise with employees engaged in commerce or the production or foods for commerce, with employees handling, selling, or otherwise working on goods or materials that have moved in or produced for commerce; and for any enterprise whose

annual dollar volume of sales made or business done is not less than $500,000 (exclusive of

excise taxes at the retail level that are separately stated).  Discovery regarding these issues would

overlap with discovery regarding the work performed by the guards, which also is relevant to the

backwages issues. Many of the same WH witnesses, employee witnesses and the FLSA

Enforcement Action individual defendants who would likely testify about GGS's annual dollar

volume and operations also would likely testify about GGS's pay practices as outlined above.

      The Secretary also would need duplicative written and deposition testimony from the

same witnesses regarding the employee/independent contractor elements and Bert Steindorf and

Sidney Smith's individual employer status, because the same witnesses have knowledge of

required and actual hours worked, the kind of work performed, initial and changing pay rates,

duration of employment, and total wages paid – the backwages "damages" facts.  Thus

bifurcation and stay of discovery would require twice the amount of time and resources for the

Secretary and GGS's employees and former employees.  Separate discovery would create

additional burdens on the Secretary and the many employees and former employees of GGS and

delay the ultimate payment of backwages to these relatively low-wage workers.  Requiring these

employees and former employees to give two depositions is not only time consuming, but would

unfairly burden the guards who are paid by the day, and would have to take multiple absences

from work.

      In summary, because the facts and discovery that are relevant to the elements for

establishing the employee status of GGS's guards, the employer status of the FLSA Enforcement

Action individual defendants, and enterprise coverage all substantially overlap the facts and

discovery relating to  backwage "damages," including required work schedules, hours worked,

daily and subsequent rates, total wages paid, duration of employment, and deductions from wages, and because the same witnesses would be required to testify during both proposed phases of discovery, a partial stay would lead to duplicative discovery, wasted resources and would unduly burden the witnesses.

### C.    Bifurcation of Discovery Would Waste Judicial Resources by Causing Continuing Discovery Disputes.

GGS's requested discovery stay would burden this Court with unnecessary discovery disputes because as other courts have found,  "bifurcated discovery ha[s] proven to be an inefficient process, leading to confusion about the type of discovery permitted during the stay and consequently discovery disputes which cannot be resolved without court assistance." *Arocho v. Nafzinger*, Civ. No. 07-cv-02608-REB-KLM, 2008 WL 5101701, at * 1 (D. Colo. 2008); *accord Phillips v. United Parcel Service, Inc*., No. 08-13978, 2009 WL 3247856, at * 1 (E.D. Mich. 2009).

As just one example, here the Secretary contends that GGS's guards' rate of pay, raises in rates of pay, duration of employment, required hours worked, actual hours worked, deductions from pay, the surrounding circumstances regarding these facts, and documents relating to these facts are directly relevant to the employee/independent contractor issues and to the FLSA Enforcement Action's individual defendants' disputed status as FLSA employers.  GGS may argue that one or more of these facts or related documents are only relevant to the issue of "damages" and that the Secretary may not inquire into them in depositions or through written discovery requests.  Such disputes would result in continuing discovery motions being submitted to the Court regarding the parameters of permissible discovery under the proposed bifurcation

14

order.  In short, the proposed limitation on discovery would only impede judicial efficiency and increase discovery costs.

### D.    Bifurcation of Discovery Would Prejudice the Secretary.

It would be prejudicial to the Secretary to be initially prohibited from inquiring into the hours that GGS required their guards to work, the actual hours GGS's guards worked, how GGS set its guards' daily wage rates, how, when and why GGS decided to raise their guards' wage rates, the length of time GGS's guards worked for GGS, the deductions (if any) GGS took from their guards' wages, and the amounts that GGS paid to the guards for the work they provided for GGS.  As discussed in Section B above, such a bar would prohibit discovery into the very facts establishing the GGS's FLSA liability, including the employment status of the guards. It would also prohibit discovery of facts concerning enterprise coverage under the FLSA, and Bert Steindorf's and Sidney Smith's individual liability as employers under the Act.  The Secretary would "essentially be precluded from conducting discovery in [her] favor while Defendants gather evidence in support of their defense." *Phillips*, 2009 WL 3247856, at * 1; *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113,116 (E.D. La. 1992); *accord Tidewater Marine, Inc. v. Sanco International*, No. 96-1258, 1998 WL 131738, at * 6 (E.D. La. 1998).

Additionally, if a motion for summary judgment by GGS is denied, as the Secretary anticipates will occur, the Secretary then would have to endure a separate and duplicative discovery process and would be prejudiced by the delay. *Tidewater Marine, Inc.*, 1998 WL 131738, at * 6 (citations omitted) (denying opposed motion to bifurcate discovery and trial and stay certain discovery, because if the plaintiff's claims prevailed, then the parties "would have to endure a separate and duplicative discovery process to prepare for trial," and the plaintiff would

be "severely prejudiced by the considerable delay that would result").  In this regard, it is important to point out that although the Secretary is seeking backwages and liquidated damages in the FLSA Enforcement Action that would be paid to GGS's employees and former employees, the Secretary does not represent these employees and former employees and does not have control over them. *See Arocho v. Nafzinger*, Civ. No. 07-cv-02608-REB-KLM, 2008 WL 5101701, at * 1 (D. Colo.  2008) (denying motion for partial stay of discovery on some issues because "with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed.  As such, delay may diminish Plaintiff's ability to proceed."); *accord*, *Williams v. Treasure Chest Casino*, Nos. Civ. A. 9503968, Civ. A. 97-0947, 1998 WL 42586, at * 10 (E.D. La. 1998).

GGS's proposed stay of discovery also would obstruct the parties' ability to negotiate a settlement and thereby resolve the case. *Treasure Chest Casino* 1998 WL 42586, at * 10; *Tidewater Marine, Inc.*, 1998 WL 131738, at * 7.   Settlement offers are unlikely to be extended or evaluated without any discovery concerning the backwages due to the guards.  *See Laitram Corp.*, 791 F.Supp. at 117.

**E.      GGS's Speculation Does Not Establish Grounds for Bifurcation and Stay of Discovery.**

In every case there is a speculative possibility that judicial economy will be served if the defendants (here, in this declaratory judgment action, the Plaintiffs) prevail on the issues to be tried first, thus eliminating the need to consider the remaining issues.  At this stage of the proceedings, however, GGS cannot demonstrate any likelihood that it will prevail on these

issues, and Smith's self-serving affidavit does not do so.  GGS's argument that a verdict in its

favor on one liability issue would obviate a need for discovery on damages "does not, without

more, satisfy [GGS's] burden to prove that bifurcation is justified."  *Fuji Machine Mfg. Co., Inc.*

*v. Hover-Davis, Inc*., 936 F. Supp. 923, 924 (W.D. N.Y. 1997).  Indeed, from the Secretary's

perspective, based on the information gathered during the investigation and as discussed above,

it is clear that at the very least, genuine issues of fact exist regarding GGS's employer status vis-

à-vis their guards that would preclude summary judgment for GGS.

GGS also speculates and complains that obtaining and reviewing the "Traffic Logs"

would be burdensome and expensive, and also incorrectly assumes that the Logs are relevant

only to the issue of backwages. This argument does not support bifurcation and the restricted

discovery sought by GGS.  First, the Traffic Logs are directly relevant to the GGS's guards'

status as employees (not independent contractors), to Steindorf's and Smith's individual liability

as employers under the Act, and to enterprise coverage.  For example, the Logs that GGS

provided to their guards and required that they complete and compile 24 hours a day, 7 days a

week are further evidence of the control that GGS exercised over their guards.  GGS's providing

Log forms to its guards, the training it provided to its guards regarding the Logs, GGS's

practices regarding its review and retention of the Logs, and Steindorf's and Smith's managerial

involvement in all of these practices and requirements regarding the Logs also are facts that are

directly relevant to their individual FLSA liability.  The Traffic Logs are also relevant to the

interstate commerce element of enterprise coverage.  Second, GGS expressly relies on and cites

to the Traffic Logs as a defense.  *See* Amended DJ Complaint.  GGS cannot have it both ways,

relying on the Traffic Logs to support its defenses, but at the same time sequester the Logs from

discovery.  Third, document review and production is a cornerstone of modern litigation.  Trial counsel are skilled in scanning, producing, sorting and reviewing documents through Excel© and other software.  Thus, even if GGS is correct that there are many pages of Traffic Logs (to date, GGS has not produced  a single page of Traffic Logs), that does not provide any support for preventing discovery of such documents that are directly relevant to many issues including liability.

GGS's reliance on cases cited in its motion is equally misplaced.  Here, the Secretary opposes bifurcation, yet GGS cites *Luna v. Del Monte Fresh Produce*, No. 1:06-CV-2000-JEC, 2008 WL 754452 (N.D. Ga. 2008),  *Niland v. Buffalo Laborers Welfare Fund*, No. 04-CV-0187, 2007 WL 3047099 (W.D.N.Y. 2007) and *Robinson v. Ladd Furniture*, Inc., 872 F. Supp. 248 (M.D.N.C. 1994).  GGS's  Motion at 9-10.  In *Luna*, the parties agreed to a bifurcated discovery schedule.  In *Niland*, both parties sought bifurcation in that Title VII action.  2007 WL 3047099 at * 1.  In *Robinson*, "both parties moved to bifurcate discovery" in a case brought under North Carolina or California state law and the ADEA. 872 F.Supp. at 248.

In contrast, when a party opposes bifurcation and partial stay of discovery, as the Secretary does here, courts more often deny bifurcation, as should this Court.  *See, e.g., Bottello v. COI Telecom*, No. SA-10-CV-305-XR, 2010 WL 3784202, at * 7-8 (W.D. Tex. 2010) (denying opposed motion to bifurcate discovery and trial because "[t]he Court is unconvinced that bifurcation will result in judicial or litigant resources being conserved"); *Phillips*, 2009 WL 3247856, at * 1-2 (denying opposed motion to bifurcate discovery because such a limitation would prejudice the opposing party, and could lead to further litigation regarding the bounds of such a limitation and to duplicative discovery); *Stewart v. Project Consulting Services*, *Inc.,* No.

CIV. A. 99-3595, 2000 WL 1880321, at * 3 (E.D. La. 2000) (denying opposed motion to

bifurcate liability from damages in FLSA case); *Tidewater Marine*, 1998 WL 131738, at * 6-7

(denying opposed motion to bifurcate and stay discovery and trial on liability and damages

issues, because bifurcating and staying discovery "would not further the interests of judicial

efficiency, convenience and fairness"); *Williams*, 1998 WL 42586, at * 9-10 (denying opposed

motion to bifurcate the threshold issue and stay discovery of the remaining issues because of

potential of repetitive discovery, restrictions on settlement negotiations and prejudice to the party

opposing bifurcation); *Fuji Machine v. Hover-Davis, Inc*., 936 F.Supp. 923, (W.D. N.Y. 1997)

(denying opposed motion to bifurcate discovery and trial on liability and damages because

"judicial resources and resources of attorneys are best served if discovery proceeds on all

issues").

      GGS also cites *Maynor v. Dow Chemical Co*., No. G-07-054, 2008 WL 2220394 (S.D.

Tex. 2008), which is inapposite because that case involved class certification issues and

discussed different methods for determining the existence of similarly situated potential

plaintiffs to join a class, an issue that is neither present here nor the subject of the GGS's motion

to bifurcate discovery.[5] *Reyes v. EZPawn*, LP, No. V-03-128, 2007 WL 3143315 (S.D. Tex.

2007), also cited by GGS, is equally unhelpful to their motion because it does not address the

issue of bifurcated and stayed discovery, but instead discusses the burdens of proof, the parties'

agreed stipulations to each element of the plaintiff's prima facie case, and the order of opening

---

5  *Collum v. Oak Street Mortgage,* No. 4:06cv252, 2007 WL 580750 (E.D. Tex. 2007) also cited
by Defendants, does not discuss whether a party opposed bifurcated discovery as is the case here,
and it bifurcated collective action and merits discovery, which neither applies here nor is the
subject of Defendants' motion. *Id*. at * 1.

and closing arguments.

GGS's reliance on *Moreau v. Klevenhagen*, 956 F.2d 516 (5th Cir. 1992) and on *Vondriska v. Cugno*, No. 8:07-cv-1322-T-24, 2010 WL 3245426 (M.D. Fla. 2010), on remand from 368 Fed. Appx. 7 (11th Cir. 2010), is equally misplaced, because these cases show that bifurcated discovery could force the parties and the courts into expensive, wasteful and unnecessary multiple adjudications.  In *Moreau*, the Fifth Circuit reversed the district court's grant of summary judgment for the employer and remanded, holding that bifurcated and partially stayed discovery on the issues of liability and damages under the FLSA had misled the plaintiff, who should have had the opportunity to conduct the stayed discovery.  956 F. 2d at 523.  In *Vondriska*, the case was on remand from the Eleventh Circuit, which had vacated the district court's grant of summary judgment for the employer on the FLSA employer issue, in which discovery had been bifurcated and partially stayed, just as GGS urges here. 2010 WL 3245426, at * 1.  Thus these cases actually support the Court's *denial* of GGS's motion to bifurcate and stay discovery in order to avoid such unnecessary and burdensome multiple adjudications.[6]

## IV.    CONCLUSION

As discussed above, the usual single phase of discovery in this case will lessen the delay, costs and inconvenience to the parties, their witnesses and the Court.  Bifurcating discovery is unlikely to save judicial resources, and instead will require wasteful duplicative discovery, burden the witnesses with double depositions, burden the Court with continuing disputes about

---

6 Yet another example of the of wasteful, multiple adjudications that can be generated where discovery is bifurcated and partially stayed is found in *EEOC v. Mobil Corp*., 344 Fed. Appx. 868, 708 (5th Cir. 2009), in which the Fifth Circuit reversed the district court's grant of summary judgment and remanded because the opposing party did not have the opportunity to conduct discovery on the bifurcated and stayed matters.

the parameters of permissible discovery, prejudice the Secretary, and has the potential to generate multiple adjudications that will waste judicial resources.  GGS has failed to present any compelling reasons for bifurcation  and stay of discovery.  The Secretary respectfully requests that the Court DENY GGS's Motion to Bifurcate Discovery.

Respectfully Submitted,

JOSE ANGEL MORENO
United States Attorney

  s/    *John A. Smith III*

JOHN A. SMITH III
Assistant United States Attorney
Southern District of Texas No. 8638
Texas Bar No. 18627450
800 North Shoreline, Suite 500
Corpus Christi, Texas  78401
Telephone:  (361) 888-3111
Facsimile:  (361) 888-3200
E-mail:  john.a.smith@usdoj.gov

Of Counsel:

M. PATRICIA SMITH
Solicitor of Labor

JAMES E. CULP
Regional Solicitor

MARGARET TERRY CRANFORD
Counsel for Wage And Hour

COLLEEN B. NABHAN
Senior Trial Attorney
Texas Bar No. 14769500

U.S. Department of Labor
Office of the Solicitor
525 South Griffin Street, Suite 501
Dallas, Texas  75202
Telephone: 972/850-3100
Facsimile: 972/850-3101

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants identified at the time of electronic filing.

 s/ *John A. Smith III*

JOHN A. SMITH III
Assistant United States Attorney
