IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| GATE GUARD SERVICES, L.P.<br>and BERT STEINDORF,<br><br>    Plaintiffs,<br><br>    v.<br><br>HILDA L. SOLIS, SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>    Defendant. | Civil Action File No. 6:10-cv-91<br><br>JURY |

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor,<br>United States Department of Labor,<br><br>    Plaintiff,<br><br>    v.<br><br>GATE GUARD SERVICES, LP DBA<br>GATE GUARD SERVICES,<br>BERT STEINDORF and SIDNEY L. SMITH,<br><br>    Defendants. | Civil Action File No. 6:11-cv-14<br><br>JURY |

**PLAINTIFFS' REPLY
IN SUPPORT OF MOTION TO BIFURCATE DISCOVERY**

COME NOW Plaintiffs, Gate Guard Services, L.P. ("GGS") and Bert Steindorf ("Mr. Steindorf") (collectively, "Plaintiffs"), and file their Reply in Support of Plaintiffs' Motion to Bifurcate Discovery (the "Motion") in each of the above captioned matters, as follows:

I.  **INTRODUCTION**[1]

The Secretary's Response in Opposition to GGS and Mr. Steindorf's Motion to Bifrucate completely fails to address the two critical issues requiring bifurcation as set forth in Plaintiffs' Motion. First, Courts have consistently bifurcated cases where the central claim is whether the individuals at issue (i.e., the Contractor Gate Attendants) are even covered by the FLSA. Even where a determination of damages would be simplistic, courts have repeatedly refused to decide damages at the same time as liability when coverage under the FLSA is at issue. The Secretary does not address this precedent, and in fact, avoids it entirely.

Second, there is a compelling need to bifurcate this case beyond the employee vs. independent contractor issue – e.g., The Traffic Logs. Specifically, it will be extremely arduous and burdensome for the parties to determine the hours worked by each Contractor Gate Attendant because the critical evidence necessary for this calculation are the thousands of pages of Traffic Logs that exist only in hard copy form. As explained herein and in GGS and Mr. Steindorf's principal brief, even by conservative estimates, the volume of Traffic Logs that will be required to be produced will cause the parties to spend numerous hours muddling through them. This endeavor will be time-consuming, costly, and, most importantly, futile if this Court determines that the Contractor Gate Attendants are, as an initial matter, independent contractors outside the scope of the FLSA. Federal courts have recognized that this type of tedious and voluminous review of potentially unnecessary documents is exactly the type of concern that justifies bifurcation. If the Contractor Gate Attendants are not "employees" of GGS, then it would be absolutely futile for Plaintiffs' attorneys or the Secretary's attorneys to sort through the

---

[1] Plaintiffs are filing only one document with both case captions to avoid duplication and burdening the Court with two of the exact same motions. The Secretary has informed Plaintiffs that she objects to this dual caption approach because the case has not yet been consolidated. Additionally, the Secretary has further complicated the record by filing Responses which are substantively identical and differ only in case caption, attorney signature blocks, and semantics in the introductory paragraph.

hundreds of thousands of Traffic Log pages or to delve into the intricacies of the precise hours worked by each of the approximately 400 Contractor Gate Attendants at issue. The Secretary has completely failed to address this glaring problem.

The only argument asserted by the Secretary, albeit repeatedly, is that she will be prejudiced by bifurcation of liability and damages because she will purportedly be precluded from discovering basic issues that she deems relevant to the Court's determination of liability. This is nonsense. Bifurcation would not prohibit discovery during the liability phase of <u>any of the subjects</u> listed in the Secretary's Response Brief which include basic inquiries such as: kinds of work performed/guarding assignments, required work schedules, daily wage rates, rate increases, and rate deductions. Therefore, there is no prejudice whatsoever. It is only the voluminous (i.e., thousands of pages of) Traffic Logs which are needed to calculate the time worked (alleged damages) by the Contractor Gate Attendants that GGS and Mr. Steindorf seek to bifurcate.

Accordingly, Plaintiffs have more than satisfied their burden of showing that bifurcation is warranted in the interests of a just, speedy, and inexpensive adjudication of this action for both of the parties and the Court. The Secretary has not and cannot refute Plaintiffs' compelling argument. For this reason, GGS and Mr. Steindorf respectfully request that the Court bifurcate this action by determining liability first, and if necessary, later determining the amount of damages through the voluminous Traffic Logs to avoid prejudice to GGS and Mr. Steindorf, as well as the Secretary.

II. **ARGUMENT AND CITATION OF AUTHORITY**

    A. **GGS Has Met its Burden of Demonstrating that Bifurcation Is Necessary to Prevent Undue Burden, Expense and Prejudice to the Parties.**

The Secretary's opposition to Plaintiffs' proposed Motion to Bifrucate Discovery as to liability and damages rests on the flawed conclusion that because bifurcation of discovery is not typical, the Court should not do so here. [Dkt. #26, p. 5] (citing *Swofford v. B&W, Inc.*, 336 F.2d 406, 415 (5th Cir.), *cert denied* 379 U.S. 962 (1965) ("the normal lawsuit seldom requires a separate trial of the issues."))[2] While the Secretary is correct that discovery bifurcation is not the typical course and that Plaintiffs have the burden of demonstrating that such bifurcation is warranted, her Response misses the point of Plaintiffs' Motion - bifurcation is warranted here precisely because **this is not a typical case**.

As the Secretary recognizes, Rule 42(b) provides for bifurcation "for convenience, to avoid prejudice, or to expedite and economize." [Dkt. #26, p. 5]. Motions seeking bifurcation "are to be granted by the court on a case-by-case basis." *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 983-84 (D. Del. 1982); *see also Goldman v. RadioShack Corp.*, No. 03-0032, 2005 WL 1155751, at *1 (E.D. Pa. May 13, 2005) (citing *Barr Laboratories v. Abbott Laboratories*, 978 F.2d 98, 115 (3d Cir. 1992) ("The decision of whether to bifurcate is within the sound discretion of the district court.") Similarly, Rule 26(c) confers considerable discretion upon a district court to limit the means and scope of discovery. *In re Merscorp, Inc.*, No. C-07-25, 2008 WL 347682, at *3 (S.D. Tex. Feb. 6, 2008); *Carnaby v. City of Houston*, No. 4:08-cv-1366, 2008 WL 4546606, at *1 (S.D. Tex. Oct. 10, 2008) ("The trial court has broad discretion in using

---

[2] Significantly, *Swofford*, which the Secretary purportedly cites to support her argument that bifurcation is not warranted here, actually supports Plaintiffs' argument that atypical circumstances like those here warrant bifurcation. In *Swofford*, the Court recognized that a separate trial of issues is seldom warranted in a "normal" lawsuit. 336 F.2d at 415. In the same breath, however, the Court concluded that **special circumstances did indeed justify bifurcation in that case**. 336 F.2d at 415 (bifurcating issue of liability and damages in patent action because trial of the liability issue alone "may be had without injustice.")

4

protective orders to limit the means and scope of discovery.")(citing *Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1320 (5th Cir. 1989)).

Despite the Secretary's conclusory assertions to the contrary [Dkt. #26, p. 6], Plaintiffs have met their burden of showing that bifurcation is necessary "to expedite and economize" under 42(b) and that "good cause" exists to "protect a party [] from annoyance, embarrassment, oppression or undue burden and expense" under Fed. R. Civ. P. 26(c). Compelling Plaintiffs to collect and produce the Traffic Logs before liability has been determined would clearly cause Plaintiffs undue prejudice. Thus, the sheer volume and complexity of collecting the daily Traffic Logs for approximately <u>400 Contractor Gate Attendants, or even to locate them for a representative sample,</u> coupled with the fact that federal courts frequently choose to bifurcate liability and damages in FLSA actions where coverage is at issue, weighs strongly in favor of bifurcating liability and damages here. The Secretary has utterly failed to present any logical argument to the contrary.

    1.    <u>The Secretary's Response Brief Ignores the Compelling Circumstances Presented by the Traffic Logs.</u>

In this case, the discovery respecting the damages issue will be arduous, time-consuming and complex for the primary reason that the Contractor Gate Attendants' voluminous handwritten Traffic Logs, which are spread across Texas, will be cumbersome to collect, review, and decipher. [Dkt. # 23, Ex. 2 ¶¶ 10-14.] Despite the length of the Secretary's Response, she does not address the voluminous nature and hardship associated with the Traffic Logs, which are the crux of the compelling circumstances Plaintiffs have established in support of bifurcation. Federal courts have recognized that tedious and voluminous review of potentially unnecessary documents is <u>exactly the type of concern that justifies bifurcation</u>. *See, e.g., Novopharm Ltd v. Torpharm, Inc.*, 181 F.R.D. 308, 311 (E.D. N.C. 1998) (holding that because the damages issue

would "place a heavy burden on [defendant] to produce voluminous documents" and because "production and synthesis of these materials may become unnecessary [if plaintiffs do not prevail on liability issue]" this strongly "militates in favor of bifurcating" discovery and trial); *Alyeska Pipeline Serv. Co.*, 538 F. Supp. at 983-84 (recognizing that separate trial of liability and damages was appropriate where the party requesting bifurcation "did not rely on the general proposition that the damages issues is complex, **but expressly represented to the Court that to resolve the damage issue will require a review of millions of documents and require extensive time** both during discovery and at trial.")

Like the moving parties in *Novopharm* and *Alyeska Pipeline*, Plaintiffs have precisely met their burden of showing that collecting and producing the Traffic Logs will be extremely burdensome through the testimony of Sidney Smith, a manager at GGS. Plaintiffs have not simply set forth mere "stereotyped and conclusory statements" as the Secretary alleges. *Compare In re Terra Int'l*, 134 F.3d 302, 606 (5th Cir. 1998) [Dkt. #26, p. 7] (party had failed to make "particular and specific demonstration of fact" warranting jury sequestration order under Fed. R. Civ. P. 26(c)(5) where it made only superficial allegations regarding the potential for testimony contamination without citing **any** specific evidence or affidavits.)

Here, of course, Plaintiffs have amply described the Traffic Log collection process, explaining that each individual Contractor Gate Attendant fills out a Traffic Log which can contain multiple sheets for each day he or she works. [Dkt. # 23, Ex. 2 ¶¶ 5, 7.] Specifically, the Contractor Gate Attendants fill in information under each column on the Traffic Logs, indicating the name of the driver, company, license tag number, and date and time that each vehicle enters or departs the oil field. [*Id.* ¶ 5.] Because the volume of traffic varies at each oil field site based on whether work is in the drilling or production phase, the number of pages of each Contractor

Gate Attendant's Traffic Log varies. On average, a Contractor Gate Attendant fills out 2-3 Traffic Log pages per day. [*Id.* ¶ 7.] Given the hundreds of current and former GGS Contractors, GGS has collected approximately hundreds of thousands of pages of Traffic Logs. [*Id.* ¶ 11.]

These Traffic Logs are not maintained in any particular manner, and are not organized in any particular fashion. For example, they are not separated by date, name or location. [*Id.* ¶ 10.] Because the Traffic Logs are not kept in an organized manner, if a GGS representative had to locate a particular Traffic Log completed by a particular Contractor Gate Attendant on a particular day, it would likely take a considerable amount of effort and expense to locate this information. [*Id.* ¶ 12.] The Traffic Logs of Contractor Gate Attendants currently performing work for GGS are maintained either at the Contractor Gate Attendants' respective oil field work site or at other storage locations throughout the State of Texas, including Victoria. [*Id.* ¶ 8.]

As explained in detail in Plaintiffs' Motion [Dkt. # 23, p. 11-13], given the average of 2-3 sheets of paper completed per day per Contractor Gate Attendant and the Secretary's estimates that 345 "currently known" (those working from February 2009 through July 2010) Contractor Gate Attendants are affected by the Transferred Action [Civil Action No. 6:11-cv-14, Dkt. # 20, p. 6], this means that the total number of Traffic Logs that she may request during discovery could amount to **690 to 1,725 pages of Traffic Logs per day**[3] from February 2009 through present. Even if only half of the 345 specified individuals[4] were working on any given day over a two-year period and were producing only two (2) Traffic Log pages per day, for example, this would still yield approximately **251,120 pages of Traffic Logs**. In turn, if each of the specified

---

[3] These estimates are based on Plaintiffs' current good-faith knowledge respecting the Contractor Gate Attendants' logging practices. GGS reserves the right to update these numbers as discovery progresses.
[4] Plaintiffs acknowledge that each of the 345 Contactor Gate Attendants specified by the Secretary did not work every day for the relevant time period. Nonetheless, Plaintiffs submit that the amount of documents requested will inevitably amount to **hundreds of thousands of pages** of documents and prove extremely burdensome for Plaintiffs to produce.

Contractor Gate Attendants were working each day of the two-year period, producing the same two (2) traffic log pages per day, this would yield **over half a million pages of Traffic Logs**. Of course, the total number of Traffic Log pages will multiply significantly when the additional Contractor Gate Attendants and dates worked from August 2010 through the present are incorporated. Assuming the same numbers of Contractor Gate Attendants were working each day from February 2009 through present, for example, the number of approximate Traffic Log pages yielded would be approximately **333,680**. And even if a representative sample is used, there are hundreds of Traffic Log sheets that may be attributable to each Contractor Gate Attendant's hours worked, which would result in thousands of documents that would need to be reviewed.

Thus, even by conservative estimates, the volume of Traffic Logs that Plaintiffs will be required to produce is unbelievably burdensome, time-consuming, and costly. This insurmountable burden, combined with the fact that production will prove unnecessary if the Court finds that the Contractor Gate Attendants are independent contractors, strongly weighs in favor of bifurcation. *Novopharm Ltd.*, 181 F.R.D. at 311; *Alyeska Pipeline Serv. Co.*, 538 F. Supp. at 983-84.

    2. <u>Courts Frequently Bifurcate Cases Where the Issue of Coverage Under the FLSA - Whether an Individual is an "Employee" - is Potentially Dispositive.</u>

As explained fully in Plaintiffs' Motion, the issue of whether the Contractor Gate Attendants are independent contractors or employees is relatively straightforward, and Plaintiffs believe that there is a high likelihood that this issue will be dispositive. [Dkt. #23, pp. 8-10.] If the Court determines that GGS and Mr. Steindorf are not covered by the FLSA, this action can be disposed of fairly expeditiously and the damages issue will be moot. *See, e.g., Robinson v. Ladd Furniture*, 872 F. Supp. 248, 249 (M.D.N.C. 1994) (authorizing a similar discovery bifurcation because the parties recognized that "if [the alleged employee] is an independent

contractor, <u>then all claims should be dismissed</u>.") Accordingly, the time and resources that the Court and the parties spend on these issues will prove wasteful and inefficient should the Employee-Independent Contractor Issue dispose of this entire action.

Indeed, in seeking to avoid precisely this kind of waste, numerous courts have recognized that bifurcation of discovery is in the interests of the parties and the Court where, as here, the threshold issue <u>is whether the workers are employees or independent contractors</u>. *See, e.g., Keeton v. Time Warner Cable*, No. 2:09-cv-1085, 2010 WL 2076813, at *1 (S.D. Ohio May 24, 2010); *Vondriska v. Cugno*, No. 8:07-cv-1322-T-24-TGW, 2010 WL 3245426, at *2 (M.D. Fla. Aug. 17, 2010) (in FLSA collective action, bifurcating discovery because "the threshold issue of whether PBS (or Cugno) qualified as an employer under the FLSA is a <u>discrete legal issue that lends itself to bifurcated discovery</u>."); *Luna v. Del Monte Fresh Produce*, No. 1:06-CV-2000-JEC, 2008 WL 754452, at *2 (N.D. Ga. Mar. 19, 2008); *Niland v. Buffalo Laborers Welfare Fund*, No. 04-cv-0187F, 2007 WL 3047099, at *1 (W.D. N.Y. Oct. 18, 2007) (entering a scheduling order bifurcating discovery and dispositive motions regarding whether Defendants were "employers" under Title VII); *Robinson*, 872 F. Supp. at 249 (in ADEA action, bifurcating discovery on the issue of whether Plaintiff was an employee or an independent contractor).

In particular, courts have recognized that the elements of **FLSA actions** are uniquely suited to bifurcation, both in the context of discovery and trial. Ellen C. Kearns, <u>The Fair Labor Standards Act</u> § 9.VIII.B (2d ed. 2010) ("Frequently, parties in FLSA collective actions will seek to bifurcate the liability and damages phases of trial, as well as discovery."); *See also Reich v. Dep't of Conservation and Natural Resources*, 28 F.3d 1076 (11th Cir. 1994) (noting district court bifurcated issues of liability and discovery in FLSA action); *Alexander v. Wackenhut Corp.*, No. 07-262, 2008 WL 2697163, at *3 (E.D. La. July 1, 2008) (granting in part defendant's

motion for summary judgment in FLSA action during liability phase of bifurcated action); *Beck v. City of Cleveland*, 542 F. Supp. 2d 739, 739 (N.D. Ohio 2008) (deciding cross motions for summary judgment during liability phase of FLSA action); *Reich v. IBP, Inc.*, No. 88-2171, 1996 WL 137817, at *1 (D. Kan. Mar. 21, 1996) (discussing district court's findings in bifurcated FLSA action during liability and damages phases); *Bryson v. City of DeRidder*, 707 F. Supp. 245, 249 (W.D. La. 1987) (holding that defendants were not subject to the minimum wage and overtime provisions of the FLSA in bifurcated action after the liability phase). This makes perfect sense because the first thing the Secretary must prove is that <u>that an employer-employee relationship exists</u>. If the requisite relationship does not exist, then there is no need to sift through hundreds of thousands of pages of Traffic Logs or to delve into the intricacies of determining the precise hours worked of each of the approximately 400 Contractor Gate Attendants at issue.

Unable to refute this long line of precedent in favor of bifurcating FLSA cases where coverage under the Act is at issue, the Secretary makes much of the fact that the *Luna, Niland, and Robinson* cases cited in Plaintiffs' Motion involved instances where the parties agreed or jointly sought to bifurcate discovery, [Dkt. #26, p. 17] and illogically suggests that if a party opposes a bifurcation request, the Court should deny it. This assumption is incorrect. Courts, as part of their inherent authority to consider bifurcation requests on a case-by-case basis, often grant motions to bifurcate discovery, **where the request to bifurcate opposed**. *See, e.g., The Travelers Lloyds Ins. Co. v. The Sherwin-Williams Co.*, No. CC-08-251, 2010 WL 4735815, at *1 (S.D. Tex. Nov. 15, 2010) (granting opposed motion to bifurcate because doing so would potentially save the resources and time of the parties, jury, witnesses, and the court); *Shaw v. Am. Honda Motor Co., Inc.*, No. 10-38, 2010 WL 5290094, at *1 (E.D. La. Dec. 17, 2010) (granting

opposed motion to bifurcate into liability and damages phases "in the interests of judicial efficiency and economy..."); *Matter of Suard Barge Serv., Inc.*, No. 96-3185, 1997 WL 358128, at *2 (E.D. La. June 26, 1997) (granting opposed motion to bifurcate noting that "[b]ifurcation as suggested [into liability and damages phases] makes perfect sense here"); *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 982 (D. Del. 1982) (granting opposed motion to bifurcate, noting that to resolve the damages issue would require the <u>review of voluminous documents</u> and require extensive time both during discovery and at trial).

In *Goldman v. RadioShack*, for example, the Court granted RadioShack's **opposed** motion to bifurcate an FLSA action first into an initial liability phase, to determine whether the workers at issue were "non-exempt" employees covered by the FLSA, and a subsequent phase regarding the quantity of overtime damages. No. 03-0032, 2005 WL 1155751, at *1 (E.D. Pa. May 13, 2005). In doing so, the Court emphasized:

> Bifurcation is appropriate in this case because it will promote judicial economy by limiting the presentation of lengthy evidence [quantifying overtime damages] which may be irrelevant if the jury does not find RadioShack liable. . .Bifurcating the trial promotes judicial expedition and economy by limiting evidence to that which is essential to the disposition of the case. **<u>Bifurcation is also appropriate because the standards and evidence required to prove [FLSA] liability are entirely different than the evidence required to prove damages</u>**.
>
> [Addition]ally, bifurcation is appropriate because it will not prejudice Goldman and may avoid prejudice to RadioShack. **<u>The issue of liability and the issue of damages are legally distinct; therefore, bifurcation will not prejudice Goldman.</u>**

*Id.* at *1 (emphasis added). Thus, bifurcation is certainly warranted based on the facts of certain cases – particularly FLSA cases – regardless whether the parties both desire bifurcation or whether the request for bifurcation is opposed. *Id.*

Moreover, the Secretary's opposition to bifurcation is a minority position. Based on a long line of FLSA cases, both parties routinely <u>agree</u> that bifurcating discovery makes sense.

*Luna*, 2008 WL 754452, at *2 ("Because the employment issue is potentially dispositive of the case, the parties [to this FLSA action] agreed to a bifurcated discovery schedule, with the first stage of discovery to be focused on the issue of defendants' status as plaintiffs' employer.") (emphasis added); *Buffalo Laborers Welfare Fund*, 2007 WL 3047099, at *1 ("Because a determination on the ["employer"] issue in Defendants' favor would result in the dismissal of all Title VII claims, the parties to this action sought bifurcation permitting discovery . . . regarding whether Defendants are "employers" under Title VII."); *Robinson*, 872 F. Supp. at 249 ("The parties moved to bifurcate discovery on the issue of whether Plaintiff was an employee or an independent contractor because both parties agreed that if Robinson were an independent contractor, then all claims should be dismissed.") (emphasis added).

It is axiomatic that, if the Contractor Gate Attendants at issue are not deemed "employees" under the FLSA, the Secretary's entire case respecting them ends. And should this Court determine that the Contractor Gate Attendants are independent contractors, sifting through the voluminous Traffic Logs and performing intricate, individualized calculations of hours worked and back wages owed will prove time-consuming and entirely unnecessary for the Secretary, as well. The numerous plaintiffs in the above cases readily conceded that pursuing damages discovery would prove unnecessary and wasteful if the defendants prevailed on the respective "employee" or "employer" threshold issues. That the Secretary inexplicably refuses to acknowledge this same logic and resulting efficiencies does not diminish the compelling circumstances that favor discovery bifurcation here. *See Goldman*, 2005 WL1155751, at *1; *see also The Travelers Lloyds Ins.*, 2010 WL 4735815, at *1; *Shaw*, 2010 WL 5290094, at *1;

*Matter of Suard Barge Services, Inc.*, 1997 WL 358128, at \*2; *Alyeska Pipeline Service Co.*, 538 F. Supp. at 982.[5]

In short, forcing Plaintiffs to collect and produce these documents <u>before</u> the Contractor Gate Attendants' status as "employees" has even been established would be putting the cart before the horse and would be entirely wasteful. Moreover, such a course of action would unduly prejudice Plaintiffs.

**B.     The Secretary Will Not Be Prejudiced by the Requested Bifurcation.**

While the Secretary repeatedly asserts that discovery regarding the employee-independent contractor issue and damages are "intertwined" and that she will be prejudiced in her ability to show liability if this case is bifurcated, her argument lacks legal and factual support. [Dkt. # 26, pp. 8-9, 14-15.]

As a preliminary matter, the Secretary's objection regarding the discovery that would be withheld as to the service technicians is moot. As Plaintiffs made clear in the initial Motion, "Plaintiffs do not request that this Court also bifurcate discovery on the issue of whether and how much back pay GGS's service technicians might be owed." [Dkt. # 23, p. 9, n. 5.] This is because

---

[5] The other distinctions that the Secretary attempts to create as to the cases cited on pages 9-10 of Plaintiffs' Motion are also spurious because the Secretary misconstrues the case holdings. For example, the Secretary's suggestion that *Vondriska* supports a denial of Plaintiffs' Motion completely muddles the procedural posture and holding of that case. 2010 WL 3245426, at \*2. In *Vondriska*, the case was, as the Secretary contends, on remand from the 11th Circuit, which had vacated summary judgment for the employer, PBS, on an FLSA claim. *Id.* at \*1. <u>After</u> the summary judgment had been vacated and <u>after</u> the case returned to the District Court, however, the District Court considered the employer's Motion to Bifurcate and Separate Trial on the Threshold Issue of whether PBS was an "employer" under the FLSA. *Id.* <u>The District Court granted that Motion to Bifurcate, specifically recognizing that "the threshold issue of whether PBS qualified as an employer under the FLSA is a discrete legal issue that lends itself to bifurcated discovery and a separate trial."</u> *Id.* at \*2, 4. In determining that the employer issue must be tried separately, the Court recognized that the parties would otherwise "be required to engage in potentially extensive and potentially unnecessary merits discovery." *Id.* Thus the Secretary's attempts to distinguish the cases demonstrating that discovery bifurcation is appropriate when the "employee" or "employer" determination is a threshold issue simply fall flat. Such spurious arguments do not diminish the necessity of bifurcation here and should not distract this Court.

"[b]oth parties agree that the service technicians are paid as employees . . . ." and are thus covered by the FLSA. [*Id.*]

As to the Contractor Gate Attendants, the Secretary cites a list of topics that are necessary for her to prove that the Contractor Gate Attendants are employees and covered by the FLSA and surmises that she will be precluded from discovery on these topics should this case be bifurcated. The Secretary's argument in this regard is baseless. The Fifth Circuit employs a straightforward five-factor test to be used when determining whether an individual is an employee or an independent contractor under the FLSA. These five guiding factors include: (a) the permanency of the relationship; (b) the degree of control exercised by the alleged employer; (c) the skill and initiative required to perform the job; (d) the extent of the relative investments of the worker and the alleged employer; and (e) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 332-33 (5th Cir. 2008) (internal citations omitted). The Secretary concedes as much, as she cites the exact same test in her Response. [Dkt. #26, p. 7.] Bifurcation would not deprive the Secretary from discovering any of the topics listed as concerns in her Response.[6] To demonstrate that the Secretary's asserted grounds for "prejudice" are baseless, Plaintiffs will address each item of purportedly "prohibited but necessary" discovery, in turn:[7]

- <u>Kinds of work performed/guarding assignments</u> – While this topic relates to the five-factor test, bifurcation would not prevent the Secretary from conducting discovery during the liability phase. To the extent the Secretary claims that the Traffic Logs are relevant and necessary to this topic, they are not. The Traffic Logs contain only the name of the driver, company, license tag number, and date and time that each vehicle enters or

---

[6] When describing this series of topics on pages 9-10 of the Secretary's Response, tellingly, **the Secretary admits, without reservation, that her "investigation reveal<u>ed</u>** that GGS exercised unilateral control over the wages, hours and work performed . . . when GGS . . . unilaterally issued their guards assignments," etc. The Secretary's admission that her investigation reveal<u>ed</u> all of these very specific findings in the past tense undercuts the assertion in her Motion to Dismiss that her investigation is ongoing. [Dkt. #26, pp. 9-10.]

[7] Similarly, the Secretary's assertion that it will be prejudiced by bifurcation because it needs discovery as to whether GGS is an enterprise and whether Mr. Steindorf and Mr. Smith are employers is inapposite because this discovery is easily obtained without The Traffic Logs which are irrelevant to these issues. [Dkt. #26, p. 13.]

departs the oil field. They reveal nothing about the substantive types of work the Contractor Gate Attendants are performing [Dkt. # 23, Ex. 2 ¶ 11.] Rather, such questions may be answered by the Contractor Gate Attendants or GGS Representatives in their respective depositions or through written discovery. Accordingly, the Secretary's argument in this regard does not show prejudice.

- Required work schedules/actual hours GGS required the Gate Attendants to work – While the alleged "required" work schedules may go to the control element of the 5 factor test, bifurcation would not prevent the Secretary from conducting discovery during the liability phase. To the extent the Secretary claims that the Traffic Logs are relevant and necessary to this topic, they are not. The Traffic Logs contain only the name of the driver, company, license tag number, and date and time that each vehicle enters or departs the oil field. They reveal nothing about the "required" work schedules of the Gate Attendants. [Dkt. # 23, Ex. 2 ¶ 11.] Rather, such questions may be answered by the Contractor Gate Attendants or GGS Representatives in their respective depositions or through written discovery. Accordingly, the Secretary's argument in this regard does not show prejudice.

- How GGS set the Contractor Gate Attendants' daily wage rates and when and why their rates were raised - This discovery is irrelevant to the five-factor test or the independent contractor determination. Even assuming it is relevant, however, the Traffic Logs reveal nothing about the Contractor Gate Attendants' wages or how GGS calculated them. [See Dkt. # 23, Ex. 2 ¶ 11.] Rather, such questions may be answered by the Contractor Gate Attendants or GGS Representatives in their respective definitions. Moreover, the Secretary may immediately obtain information on this issue through written interrogatories or requests for any documents beyond the Traffic Logs, themselves. Accordingly, the Secretary's argument in this regard does not show prejudice.

- Duration of employment/length of time the Contractor Gate Attendants worked for GGS - While the duration of the working relationship is relevant to the permanency of the relationship element of the 5 factor test, bifurcation would not prevent the Secretary from conducting this discovery during the liability phase. To the extent the Secretary claims that the Traffic Logs are relevant and necessary to this topic, they are not. While the Traffic Logs may reveal particular dates worked, they do not convey the overall duration of the Contractor Gate Attendant's work with GGS. [See Dkt. # 23, Ex. 2 ¶ 11.] Rather, such questions may be answered by the Contractor Gate Attendants or GGS Representatives in their respective depositions. Moreover, the Secretary may obtain information on this issue through written discovery and the contracts between GGS and the Contractor Gate Attendants. Accordingly, the Secretary's argument in this regard does not show prejudice.

- Deductions (if any) GGS took from the Contractor Gate Attendants' wages - While pay deductions may or may not be relevant to the 5 factor test, bifurcation would not prevent the Secretary from conducting this discovery during the liability phase. Moreover, the Traffic Logs reveal nothing about the Contractor Gate Attendants' wages or what deductions GGS may have taken from them. [See Dkt. # 23, Ex. 2 ¶ 11.] Rather, such

15

- <u>Total Wages and/or Amounts that GGS Paid the Contractor Gate Attendants for Their Work</u> – Again, wage amounts have nothing to do with the independent contractor determination. Moreover, the Traffic Logs indicate nothing about the amounts the Contractor Gate Attendants were paid. The Secretary is, however, entitled to obtain testimony on this issue at the depositions of the GGS representatives and/or Contractor Gate Attendants. Moreover, the Secretary may obtain information on this issue through written discovery. Accordingly, the Secretary's argument in this regard does not show prejudice.

[Dkt. # 26, pp. 2- 4, 8-11, 13-14.]

Significantly, in requesting bifurcated discovery, Plaintiffs are focused solely on <u>staying the production of the thousands of pages of Traffic Logs</u>. Plaintiffs do not intend to prevent the Secretary from generally inquiring into: rates of pay, typical hours worked, pay deductions, or from discovering issues such as whether "GGS provided to their guards [the Traffic Logs] and required that they complete and compile 24 hours a day, 7 days a week", "training" regarding the Traffic Logs, and "managerial involvement in all of these practices and requirements regarding the Logs." [Dkt. #26, p. 17.] Further, GGS submits that it would be willing to provide an exemplar Traffic Log, alleviating the Secretary's claims of "sequester[ed]" discovery. [Dkt. # 26, p. 16.] Clearly, Plaintiffs' proposed bifurcation does not require two sets of depositions as the Secretary alleges. [Dkt. #26, p. 12.]

Similarly unconvincing are the cases the Secretary cites in an attempt to show that she will face "prejudice" from the proposed bifurcation. These cases are inapposite given the types of prejudice the non-moving party faced in those cases. [Dkt. # 26, pp. 14-15.] In *Tidewater Marine, Inc. v. Sanco Internat'l*, for example, the Court denied a motion to bifurcate liability and damages in a negligence and breach of duty suit dealing with losses that resulted from a sunken

ship. No. A.96-1258, 1998 WL 131738, at * 6 (E.D. La. Mar. 20, 1998). In doing so, the Court recognized that the plaintiff would be prejudiced by a bifurcation because "if one or all of the defendants prove unable to satisfy plaintiff's judgment, plaintiff will have to endure a separate and potentially repetitive second trial." Here, the Secretary will not be faced with two separate and potentially repetitive trials or discovery periods. Nor did the defendant seeking bifurcation present the unique document collection and production concerns that Plaintiffs raise here. *See also Latraim v. Hewlett Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992) (patent case denying motion to separate trials, but ordering that trial proceed in three distinct phases).

In sum, once the purportedly "prohibited" discovery is analyzed along side Plaintiffs' dire need for bifurcation, it becomes evident that the Secretary will, in fact, suffer no prejudice. The Secretary's repeated assertions that "[f]acts regarding these 'liability' elements . . . overlap the facts regarding the 'damages' backwages issues" [Dkt. #26, p. 8] are completely hollow and do not diminish the fact that bifurcation of discovery is warranted in this case.

### III. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that their Motion for Bifurcation of liability and damages be GRANTED.

<SIGNATURE ON FOLLOWING PAGE>

This 6th day of May, 2011.

CHAMBERLAIN HRDLICKA
WHITE WILLIAMS & MARTIN


By: /s/ Annette A. Idalski
    Annette A. Idalski
    Texas Bar No. 00793235
    Federal I.D. 1130754
    191 Peachtree Street, N.E.
    Thirty-Fourth Floor
    Atlanta, GA 30303-1747
    Telephone: (404) 658-5386
    Facsimile: (404) 659-1852

*Attorneys for Plaintiffs Gate Guard Services, L.P. & Bert Steindorf*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| GATE GUARD SERVICES, L.P. and BERT STEINDORF, <br><br> Plaintiffs, <br><br> v. <br><br> HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, <br><br> Defendant. | Civil Action File No. 6:10-cv-91 <br><br> JURY |

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> GATE GUARD SERVICES, LP DBA GATE GUARD SERVICES, BERT STEINDORF and SIDNEY L. SMITH, <br><br> Defendants. | Civil Action File No. 6:11-cv-14 <br><br> JURY |

## CERTIFICATE OF SERVICE

This is to certify that on this date I have electronically filed the foregoing PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO BIFURCATE DISCOVERY with the Clerk of Court via the CM/ECF system and have served a copy of the same via the CM/ECF system on:

UNITED STATES DEPARTMENT OF LABOR
Colleen B. Nabhan
Office of the Solicitor
525 Griffin Street, Suite 501
Dallas, Texas 75202
nabhan.colleen@dol.gov

OFFICE OF UNITED STATES ATTORNEY
John A. Smith, III
800 N Shoreline Blvd, Suite 500
Corpus Christi, Texas 78401
john.smith@usdoj.gov

This 6th day of May, 2011.

                                  **CHAMBERLAIN HRDLICKA**
                                  **WHITE WILLIAMS & MARTIN**

                        By: */s/ Annette A. Idalski*
                                Annette A. Idalski
                                Texas Bar No. 00793235