UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **GATE GUARD SERVICES L.P.** *et al.*, § | |
| § | |
| Plaintiffs/Counter-Defendants, § | |
| § | |
| v. § | **CIVIL ACTION NO. V-10-91** |
| § | |
| **HILDA SOLIS, Secretary of Labor,** § | |
| **United States Dept. of Labor,** § | |
| § | |
| Defendant/Counter-Plaintiff. § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff/Counter-Defendant Gate Guard Services, L.P.'s ("Gate Guard") Amended Motion to Seal Portions of the Deposition Transcripts of Bert Steindorf and Sidney L. Smith and Motion for Protective Order (Dkt. No. 96), to which Defendant/Counter-Plaintiff Hilda Solis, Secretary of Labor, United States Department of Labor ("the Secretary") has responded (Dkt. No. 98) and Gate Guard has replied (Dkt. No. 106, Ex. A).[1] Having considered the motion, response, reply, record, and applicable law, the Court is of the opinion that Gate Guard's motion should be **GRANTED** in part and **DENIED** in part.

**I. Background**

Gate Guard is in the business of providing gate attendant services to oil companies. After the Secretary issued a determination that Gate Guard's gate attendants are employees rather than independent contractors and that Gate Guard is therefore subject to the minimum wage and

---

1. On December 20, 2011, Gate Guard filed a Motion for Leave to File Reply in Support of Its Amended Motion to Seal Deposition Transcripts (Dkt. No. 106). The motion is **GRANTED** as unopposed because the submission date has passed, and the Secretary has not filed a response. *See* S.D. TEX. LOCAL R. 7.3, 7.4 (providing that opposed motions will be submitted to the judge for ruling 21 days from filing, responses must be filed by the submission date, and failure to respond will be taken as a representation of no opposition). The deadline for the Secretary's response was January 10, 2012. To date, the Secretary has not responded to Gate Guard's motion.

overtime requirements of the Fair Labor Standards Act (FLSA), Gate Guard filed the present action seeking a declaratory judgment that it is in compliance with the FLSA.

On October 20, 2011, counsel for the Secretary took the deposition of Gate Guard's owner, Bert Steindorf ("Steindorf"). During that deposition, Steindorf testified in response to questioning concerning what Gate Guard characterizes as confidential business information and trade secrets, including confidential information about customer identities, client development methods, and marketing strategies. The following day, counsel for the Secretary took the deposition of Gate Guard manager Sidney L. Smith ("Smith"). Like Steindorf, Smith testified regarding what Gate Guard characterizes as confidential company information and trade secrets, including marketing practices.

In its motion to seal and for protective order, Gate Guard now seeks two forms of relief: (1) an order sealing specific portions of the deposition transcripts and exhibits that will be filed with the Court; and (2) a protective order preserving the confidentiality of the deposition transcripts and exhibits throughout discovery. Gate Guard's original motion argued that 156 pages of Steindorf's deposition, 65 pages of Smith's deposition, and 11 deposition exhibits should be filed under seal and treated as confidential. Gate Guard has since limited its request to 15 pages of Steindorf's deposition, 1 page of Smith's deposition, and 1 exhibit. Specifically, Gate Guard now requests to seal: Steindorf Deposition pages 75–78, 138–39, 165, 185–86, 203–04, 265–66, and 347–48; Smith Deposition page 63; and Exhibit 8 to Steindorf's Deposition. These documents discuss Gate Guard's client identities and marketing strategies, which Gate Guard argues are confidential "trade secrets," as both are used for competitive advantage and are kept "secret" so that they are not readily ascertainable by the public.

## II. Legal Standard

When a deposition transcript or other piece of evidence is filed with the court, it is considered a "judicial record." Our courts have recognized that the public has a common law right to inspect and copy judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 429 (5th Cir.1981). The public's common law right, however, is not absolute and access may be denied "where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598; *see Belo*, 654 F.2d at 430. Even though not absolute, the public's common law right of access to judicial papers establishes a presumption in favor of open records. *Belo*, 654 F.2d at 434; *see also Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3rd Cir.1988). Accordingly, "the district court's discretion to seal the record of judicial proceedings is to be exercised charily." *Federal Savings and Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987).

In addition to ordering that certain portions of the judicial record be filed under seal, courts may also enter protective orders "restrict[ing] use of discovery materials to the [opposing party], their representatives, their counsel, and their experts or consultants" under a showing of "good cause." *Scott v. Monsanto Co.*, 868 F.2d 786, 792 (5th Cir. 1989). Under Rule 26, a court:

> may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

FED. R. CIV. P. 26(c)(1)(G).

Under Texas law, "a trade secret is 'any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it.'" *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)). Customer

lists, client information, and marketing strategies have been recognized as trade secrets by Texas courts. *See Global Water Group, Inc. v. Atchley,* 244 S.W.3d 924, 928 (Tex. App.—Dallas 2008, pet. denied) (citing *T–N–T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, no pet.)).

### III. Analysis

#### A. Client Identities

With respect to its client identities, Gate Guard has offered evidence that it has taken affirmative steps to keep its client list confidential. Specifically, Gate Guard: does not publicize its client list; does not divulge to outside parties any information pertaining to the parties' contractual relationship or Gate Guard's performance of services; maintains its Master Service Agreements (MSAs) with clients in a locked room; and password protects the MSAs on its computer's server. Gate Guard has submitted further evidence that it has represented to its clients that it will not publicly disclose their names or information concerning the work it performs for them.

The Court finds that the identities of Gate Guard's clients have no bearing on the central issue in this case, which is whether Gate Guard's gate attendants are employees or independent contractors. The Court further finds that Gate Guard has made a sufficient showing that the interests favoring nondisclosure outweigh the public's common law right of access with respect to its client list. Thus, if Gate Guard had moved to seal a copy of its client list, the Court would grant such a request. *See Hal Wagner Studios v. Elliott*, 2009 WL 854676, at *3 (S.D. Ill. Mar. 30, 2009) (granting motion to seal customer lists); *U.S. ex rel. Greg Westfall v. Axiom Worldwide, Inc.*, 2008 WL 5341140, at *4 (M.D. Fla. Dec. 19, 2008) (holding that sealing

customer lists attached to the complaint was necessary to "protect confidential information about innocent third parties").

However, that does not mean that every document in this case that contains the name of a Gate Guard client must be filed under seal.[2] Instead, the Court finds that the identities of Gate Guard's clients can be sufficiently protected by merely redacting this information from any exhibits before filing them with the Court.

**2. Marketing Strategy**

A review of Steindorf and Smith's deposition transcripts shows that both individuals testified in some detail as to two specific "marketing tools" that Gate Guard uses in order to attract new clients. Although it is not clear how valuable these marketing strategies may be to Gate Guard's competitors, how much it cost Gate Guard to develop them, or how much it would cost Gate Guard's competitors to acquire or duplicate them, many Texas courts recognize that marketing strategies and tools are generally protected as trade secrets. *See Bayco Prods., Inc. v. Lynch*, 2011 WL 1602571, *4 (N.D. Tex. Apr. 28, 2011) (citing *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App. 2009, pet. denied); *Global Water Grp.*, 244 S.W.3d at 928 (Tex. App. 2008, pet. denied); *T–N–T Motorsports*, 965 S.W.2d at 22; *Grand Time Corp. v. Watch Factory, Inc.*, 2010 WL 92319, at *4 (N.D. Tex. Jan.6, 2010) (Kinkeade, J.).

The Court finds that Gate Guard has "plausibly pleaded that the marketing 'know-how' on which it relies qualifies as a trade secret under Texas law." *Bayco*, 2011 WL 1602571, at *4. Because the Fifth Circuit has held that using or disclosing even one trade secret may create a substantial threat of irreparable injury, *Union Carbide Corp. V. UGI Corp.*, 731 F.2d 1186,

---

2. Exhibit 8, for example, is relevant to Gate Guard's exercise of control over the gate attendants and the gate attendants' duties and responsibilities, both of which are relevant to the issue of whether the gate attendants are employees or independent contractors.

1191–92 (5th Cir. 1984), good cause exists for sealing any deposition testimony that discusses Gate Guard's marketing strategies and issuing a protective order limiting the disclosure of the same. *See Thermotek, Inc. v. WMI Ents., LLC*, 2011 WL 1485421, at * 9 (N.D. Tex. Apr. 19, 2011) (granting motion to seal exhibits containing trade secrets).

## IV. Conclusion

For the aforementioned reasons, it is hereby **ORDERED** that Gate Guard's Amended Motion to Seal Portions of the Deposition Transcripts of Bert Steindorf and Sidney L. Smith and Motion for Protective Order (Dkt. No. 96) is **GRANTED** in part and **DENIED** in part, as follows:

(1) Gate Guard's motion to seal Exhibit 8 to Steindorf's Deposition is **DENIED**;

(2) The Parties shall **REDACT** the names of any Gate Guard clients from all filings in this case;

(3) To the extent that any of the following documents discussing Gate Guard's marketing strategies are filed as evidence in this case, the Parties are directed to file these Protected Materials **UNDER SEAL**: Steindorf Dep. pages 75–78, 138–39, 165, 185–86, 202, 265–66, 347–48; and Smith Dep. page 63; and

(4) The aforementioned Protected Materials shall be **RESTRICTED** to: counsel for Gate Guard and the Secretary, Court staff, retained expert witnesses, trial witnesses, jury members, copy services and graphic consultants used to duplicate documents and create demonstrative exhibits, persons engaged by the Parties for the purpose of alternative dispute resolution, and officers and employees of the Parties, on a need-to-know basis.

**SIGNED** this 30th day of September, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE