# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| GATE GUARD SERVICES, L.P. | ) | |
| and BERT STEINDORF, | ) | |
| | ) | |
| Plaintiffs/Counter-Defendants, | ) | Civil Action File |
| | ) | No. 6:10-cv-91 |
| v. | ) | |
| | ) | |
| THOMAS E. PEREZ, SECRETARY OF | ) | |
| LABOR, UNITED STATES DEPARTMENT | ) | |
| OF LABOR, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## GATE GUARD SERVICES, L.P.'S SUPPLEMENTAL MOTION TO RECOVER ATTORNEYS' FEES

## I.     INTRODUCTION

Pursuant to this Honorable Court's July 24, 2013 Memorandum Opinion and Order allowing Plaintiff Gate Guard Services, L.P. ("GGS") to "refil[e] pursuant to 28 U.S.C. § 2412(d),"[1] GGS submits its Supplemental Motion to Recover Attorneys' Fees against Thomas E. Perez, Secretary of Labor, United States Department of Labor ("the Secretary").  As a prevailing party, GGS is entitled to attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) because, on the date of the commencement of this litigation, its net worth did not exceed $7,000,000, it had less than five hundred (500) employees, and the Secretary's actions in connection with this litigation were taken without substantial justification.

---

[1] *See* Dkt 146, Memorandum Opinion and Order ["July 24, 2013 Order"], p. 14 ("While the DOL's actions may not have constituted bad faith, the Court is not convinced that the DOL has shown that its actions were substantially justified. Thus, denial is without prejudice to re-filing pursuant to 28 U.S.C. § 2412(d).").

II.     **STATEMENT OF MATERIAL FACTS AND INCORPORATION BY REFERENCE**

As this Honorable Court is fully aware, the Parties have submitted extensive briefing regarding the material factual and procedural background of this litigation as it relates to an application for attorneys' fees pursuant to the EAJA.  (*See* Dkt. #137, Plaintiffs' Motion to Recover Attorneys' Fees; Dkt. #142, Secretary's Response to Motion to Recover Attorneys' Fees; and Dkt. #144, Plaintiffs' Reply in Support of Motion for Attorneys' Fees.)  In recognition of the Parties' extensive briefing already on file with this Honorable Court, inasmuch as this Motion constitutes a supplement to Dkt. #137, Plaintiff's Motion to Recover Attorneys' Fees, and pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, GGS incorporates herein by reference all material factual statements and supporting exhibits and evidence previously set forth and filed with this Court in Dkt. #137 and Dkt. #142 regarding GGS' entitlement to its attorneys' fees pursuant to the EAJA.

The following additional facts are also material.  GGS' net worth on November 19, 2010, the date upon which GGS commenced this litigation, was $6,186,896.  (Ex. A, Declaration of Arthur James Sedwick, Jr., ["Sedwick Dec."] ¶ 9.)  GGS' net worth as of the date in question is based upon, among other things, review and analysis of GGS' partnership income tax returns for the year 2010 and review and analysis of GGS' compiled financial statements prepared during the regular course of GGS' business operations.  (Ex. A, Sedwick Dec. ¶¶ 4-7.)  Furthermore, GGS had thirty-seven (37) employees as of November 19, 2010.  (Ex. B, Declaration of M. Pat Brown ["Brown Dec."], ¶ 3.)  A determination of the number of GGS' employees on the date in question

is based upon review and analysis of the Internal Revenue Service W-2 Forms prepared for 2010 and payroll records for November 2010.  (Ex. B, Brown Dec. ¶¶ 2-3.)

III.     **LEGAL STANDARD**

    A.     **Attorneys' Fees Standard Under the EAJA.**

Congress passed the EAJA in 1980 in response to concerns that persons "may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights." *Sullivan v. Hudson*, 490 U.S. 877 (1989).  Notably, however, "[t]he effort to secure such an award … should **not** result in a second major piece of litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (emphasis added).

There are **two** distinct procedures under which a district court may award attorneys' fees under the EAJA.  28 U.S.C. § 2412.  Pursuant to § 2412(b), the EAJA permits a court in any civil action brought by or against the federal government to award attorneys' fees to the prevailing party to the same extent it may award fees in cases involving other parties, whether by statute or common law.  28 U.S.C. § 2412(b)*; see also McQuiston v. Marsh*, 707 F.2d 1082 (9th Cir. 1983).  By making the federal government subject to the "bad faith" exception to the "American Rule" governing awards of attorneys' fees, this provision allows an award where the government has acted in "bad faith, vexatiously, wantonly or for oppressive reasons." *Baker*, 839 F.2d at 1081 (relying on legislative history of EAJA).

As an alternative to those awards of attorneys' fees resulting from the government's "bad faith," Section 2412(d) of the EAJA provides for a **mandatory** award of attorneys' fees to a "prevailing party" meeting certain requirements.  Section 2412(d)(1)(A) provides, in relevant part:

> Except as otherwise specifically provided by statute, a court **shall** award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded … incurred by that party in any civil action … brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).  Section 2412(d) further specifies that the term "party," as used in § 2412(d)(1)(A), means, among other things, a "partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed."   28 U.S.C. § 2412(d)(2)(B)(ii).

Thus, five (5) criterion must be met to support an award of attorneys' fees pursuant to § 2412(d): (1) the applicant must be a "prevailing party" in a suit against the government; (2) no special circumstances can exist making such an award unjust; (3) a fee application must be made within thirty (30) days of final judgment and supported by an itemized statement of such fees sought; (4) a qualifying party, if a partnership, must not have had a net worth exceeding $7,000,000 and employed more than five hundred (500) employees at the time of filing of the litigation; and (5) the government's position must not have been "substantially justified."  *See*, *e.g.*, *Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 158 (1990); *Dalles Irrigation Dist. v. United States*, 91 Fed.Cl. 689, 696 (2010); *ACE Constructors, Inc., v. United States*, 81 Fed.Cl. 161, 164 (2008).  While the applicant bears the burden of proof as to criterion one through four above, the government bears the burden of establishing its position was substantially justified, or "justified in substance or in the main that is, justified to a degree

4

that could satisfy the reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Although an award of attorneys' fees to a qualifying party under § 2412(d) is set at the statutory hourly rate of $125.00, such rates may be adjusted upward when a court "determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys or the proceeding involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).

## IV.   GGS IS ENTITLED TO ITS ATTORNEYS' FEES UNDER § 2412(d)

### A.   GGS is a "Prevailing Party" Under § 2412(d).

"[A] prevailing party under the EAJA is one succeeding on any significant issue which achieves some of the benefits sought by the suit."  *Dalles Irrigation Dist.*, 91 Fed.Cl. at 696-97.  Because GGS prevailed with respect to obtaining declaratory relief arising from the Secretary's flawed classification of the Gate Attendants as employees, the Secretary's improper calculations of back wages, and allegations that GGS failed to comply with recordkeeping requirements of the FLSA, it is undisputed that GGS was the "prevailing party" in this litigation.  (*See* Dkt. #135, Final Judgment; Dkt. #136, Memorandum and Order dated February 13, 2013.)

Furthermore, as the entity by which allegedly employed the independent contractor Gate Attendants according to the Secretary's unfounded and unsubstantiated allegations, it is without question that GGS was the primary "target" in the Secretary's investigation and subsequently filed litigation.  (*See* C.A. No. 2:11-cv-00041; *Solis v. Gate Guard Services, L.P., et al.*; In the United States District Court for the Southern District of Texas, Corpus Christi Division.)  Additionally, as the entity "who actually possesses the substantive right being asserted and has a legal right to enforce the claim"

in this litigation, GGS was, in fact, the "real party in interest" with respect to the allegations decided in this litigation.[2] *See*, *e.g.*, *Childress v. Emory*, 21 U.S. 642 (1823).

Accordingly, because GGS meets the "prevailing party" requirement of § 2412(d), it is entitled to its attorneys' fees incurred in connection with this litigation. 28 U.S.C. § 2412(d)(1)(A).

## B. No Special Circumstances Exist Making an Award of GGS' Attorneys' Fees Unjust.

The "special circumstances" provision of § 2412(d)(1)(A) is designed to prevent recovery when the party seeking its attorneys' fees has engaged in bad faith behavior and when equitable considerations such as the doctrine of "unclean hands" would make an award of attorneys' fees unjust. *See*, *e.g.*, *Devine v. Sutermeister*, 733 F.2d 892, 895-96 (Fed. Cir. 1984); *Diamond Sawblades Mfrs. Coalition v. U.S.*, 816 F.Supp.2d 1342, 1359 (Ct. Int'l Trade, 2012).

In contrast with the Secretary's repeated obstructive conduct both during the administrative process and during litigation, including the discovery process, improper and unwarranted targeting of GGS, admitted failures in following its own procedures, and other improper conduct,[3] there can be no doubt that no "special circumstances" exist making an award of GGS' attorneys' fees unjust. Rather, the totality of the circumstances demonstrates that, to the extent any "special circumstances" tend to suggest injustice, such circumstances point solely to the Secretary as the source. Accordingly, because no special circumstances exist making an award of its attorneys'

---

[2] Although GGS owner Bert Steindorf ("Steindorf") and manager Sidney Smith ("Smith") were individually named in the Secretary's subsequent litigation, the Secretary dismissed all claims against Smith, and Steindorf's individual involvement in the litigation was limited in virtually all respects.

[3] *See* Dkt. #137, Plaintiffs' Motion to Recover Attorneys' Fees, Statement of Facts, at pp. 2 – 9, and supporting exhibits and evidence cited therein, which GGS adopts and incorporates herein by reference as though set forth in full and pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

fees unjust, GGS is, therefore, entitled to its attorneys' fees incurred in connection with this litigation.  28 U.S.C. § 2412(d)(1)(A).

    **C.**    <u>GGS Timely Filed its Motion to Recover Attorneys' Fees Within Thirty (30) Days of the Court's Final Judgment.</u>

This Honorable Court entered its Final Judgment on February 13, 2013.  (*See* Dkt. #136.)  On February 27, 2013, a mere two (2) weeks later, GGS timely filed its original Motion to Recover Attorneys' Fees pursuant to the EAJA.  (*See* Dkt. #137.)   In its Motion to Recover Attorneys' Fees, GGS alleged it was a prevailing party and supported the Motion to Recover Attorneys' Fees with extensive and exhaustive evidence provided under oath, including a verified and itemized statement of attorneys' fees incurred in connection with this litigation.  (*See* Dkt. #137, Exhibit B, Declaration of Annette A. [Idalski "Idalski Dec."].)

Accepting this Honorable Court's invitation to supplement its original briefing (*see* Dkt. #146, at 14), GGS submits this Supplemental Motion to Recover Attorneys' Fees to provide this Honorable Court with additional evidence and briefing regarding GGS' entitlement to fees pursuant to § 2412(d).  *See Scarborough v. Principi*, 541 U.S. 401, 418-19 (2004) (holding a timely-filed fee application under the EAJA may be amended after the thirty (30) day filing period under relation-back doctrine to include allegation of government's lack of substantial justification); *Bazalo v. West*, 150 F.3d 1380, 1383-84 (Fed. Cir. 1998) (holding an attorneys' fee application under EAJA may be supplemented after thirty (30) day filing period to provide additional information regarding net worth).

Thus, this Supplemental Motion to Recover Attorneys' Fees meets the timeliness requirements of § 2412(d)(1)(B) because it relates back to GGS' original February 27,

2013 application, which GGS filed within thirty (30) days of this Honorable Court's February 13, 2013 Final Judgment. *Scarborough*, 541 U.S. at 418-19; *Bazalo*, 150 F.3d at 1383-84. Accordingly, GGS is entitled to its attorneys' fees incurred in connection with this litigation pursuant to § 2412(d).

   **D.    GGS' is a Qualifying Party Under § 2412(d) as its Net Worth Did Not Exceed $7,000,000 and it Employed Less Than Five Hundred (500) Employees at Commencement of the Litigation.**

   Pursuant to § 2412(d)(2)(B)(ii), a prevailing party seeking an award of its attorneys' fees under the EAJA as a partnership, must have had not more than five hundred (500) employees and a net worth not exceeding $7,000,000 at the time the litigation was commenced. As is evidenced by the Declaration of Arthur James Sedwick, Jr., which is attached hereto and incorporated herein as though fully set forth at length as Exhibit A, GGS' net worth on November 19, 2010, the date upon which GGS necessarily commenced this litigation, was $6,186,896.[4]   (Ex. A, Sedwick Dec. ¶ 10.)   As is evidenced in Exhibit A, GGS' net worth as of the date in question is based upon, among other things, a review and analysis of GGS' partnership income tax returns for the year 2010, and a review and analysis of GGS' compiled financial statements prepared during the regular course of GGS's business operations. (Ex. A, Sedwick Dec. ¶¶ 4-7.)

---

[4] GGS notes that this Verified Supplemental Motion to Recover Attorneys' Fees is filed solely on behalf of GGS as the primary "prevailing party." Although the government has often urged courts to adopt various "aggregation" principles when analyzing EAJA fee applications, no such principles apply to the case before this Honorable Court. *See Caremore, Inc. v. NLRB*, 150 F.3d 628 (6th Cir. 1998) (declining to aggregate related corporate entities in considering net worth requirement for EAJA award when applicant owned by an individual "who also control[led] several other nursing homes through his ownership of a common corporate parent."); *see also National Ass'n of Mfrs v. Dept. of Labor*, 159 F.3d 597, 602 (D.C. Cir. 1998) (refusing to adopt aggregation principles for analysis of prevailing party requirements for trade association); *Texas Food Industry Ass'n v. U.S. Dept. of Agriculture*, 81 F.3d 578, 582 (5th Cir. 1996) (similar); *Diamond Sawblades Mfgs. Coalition v. U.S.*, 816 F.Supp.2d 1342, 1350-56 (Ct. Int'l Trade 2012) (similar).

Furthermore, as is evidenced by the Declaration of M. Pat Brown attached hereto and incorporated herein as though fully set forth at length as Exhibit B, GGS had thirty seven (37) employees as of November 19, 2010.  (Ex. B, Brown Dec. ¶ 3.)  This number proves GGS was well below the statutory maximum of five hundred (500) employees when determining the propriety of an award of attorneys' fees under the EAJA.  28 U.S.C. § 2412(d)(2)(B)(ii).  As is evidenced by Exhibit B, determination of the number of GGS' employees on the date in question is based upon a review and analysis of the Internal Revenue Service W-2 Forms prepared for 2010, and payroll records for the month of November 2010.  (Ex. B, Brown Dec. ¶¶ 2-3.)

Accordingly, because GGS's net worth did not exceed $7,000,000 and GGS did not employ more than five hundred (500) employees as of November 19, 2010, GGS is entitled as a prevailing party to an award of its attorneys' fees pursuant to the EAJA.  28 U.S.C. § 2412(d).

### E.   The Secretary's Actions With Respect to GGS and This Litigation Were Not Substantially Justified.

As the Supreme Court in *Scarborough v. Principi* noted, "the required 'not substantially justified' allegation imposes no burden of proof on the fee applicant.  It is, as its text conveys, nothing more than an allegation or pleading requirement."  541 U.S. at 414; *see also Pierce*, 487 U.S. at 567.  "The burden of establishing 'that the position of the United States was 'substantially justified,' § 2412(d)(1)(A) indicates and courts have uniformly recognized, must be shouldered by the Government."  *Scarborough*, 541 U.S. at 415; *Pierce*, 487 U.S. at 567.

The position of the United States is "substantially justified" if it is "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable

person." *Pierce*, 487 U.S. at 565.  Because the Secretary is "an arm of the federal government with authority to subject its citizens to the burdens of litigation.  With this authority comes a responsibility …." *U.S. v. Hodgekins*, 28 F.3d 610, 614 (7th Cir. 1994) (applying the similar substantial justification standard under 26 U.S.C. § 7430(c)(4).)

   Significantly, "EAJA fees may be awarded if either the government's **prelitigation conduct or its litigation position** are not substantially justified." *Blakley v. United States,* 593 F.3d 1337, 1341 (Fed.Cir.2010) ("In the context of EAJA claims, we have held that the 'position of the United States' in judicial proceedings refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.'" (quoting *Doty v. United States,* 71 F.3d 384, 386 (Fed.Cir.1995))); *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). Moreover, "fees [under the EAJA] may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigation position may have been substantially justified and vice versa." *O & G Spring and Wire*, 38 F.3d at 891; *accord Marcus*, 17 F.3d at 103; *Chiu v. U.S.*, 948 F.2d 711, 715 (Fed. Cir. 1991) ("[T]rial courts are instructed to look at the entirety of the government's conduct.")

   As it relates to this litigation, there remains little doubt the Secretary acted without substantial justification in both its prelitigation conduct and with respect to its litigation position.  In support of this allegation of no substantial justification, GGS expressly adopts and incorporates herein by reference all factual statements, arguments and supporting exhibits and evidence previously set forth and filed in the papers of this Honorable Court in Dkt. #137 and Dkt. #142, as well as Court's findings of fact in Dkt. #146, regarding GGS' entitlement to its attorneys' fees pursuant to the EAJA.  Indeed,

the Court already found that it "is not convinced that the DOL has shown that its actions were substantially justified." (*See* Dkt. #146, July 24, 2013 Order, at 14.)

Accordingly, GGS is entitled to an award of its attorneys' fees under the EAJA. 28 U.S.C. § 2412(d).

### F.    GGS is Entitled to a Fee Award Enhancement Above the Statutory Rate.

#### 1.    Special Factors

Under the plain language of the EAJA, an exception may be made to the $125 per hour cap on attorney's fees and attorney rates may be increased if a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee. 28 U.S.C. § 2412(d)(2)(A)(ii). The United States Supreme Court has addressed the meaning of the phrase "the limited availability of qualified attorneys for the proceedings involved" as follows:

> We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of general lawyerly knowledge and ability useful in litigation. An example of the former would be an identifiable practice specialty such as patent law....
> .

*Pierce,* 487 U.S. at 572.  In *Pierce*, the Supreme Court ruled that fee awards exceeding the statutory cap are therefore permitted "[w]here such qualifications are necessary and can be obtained only at rates in excess of the [$125] cap." *Id.*

Applying this standard, federal courts have found that an increase in the rate requested by counsel in litigation involving the **Fair Labor Standards Act ("FLSA")** was justifiable. *Chao v. First Class Coach Co., Inc.*, 219 F.Supp.2d 1243, 1247 n. 4 (M.D. Fla. 2002) (emphasis added).  In *First Class Coach Co.*, the United States

Department of Labor filed an **FLSA lawsuit** against *First Class Coach Co.* which involved a class of drivers whom the Secretary claimed were not exempt from the FLSA. *Id.* at 1244-45. The court reached the determination that the Secretary's position in bringing and advancing the litigation was not substantially justified under the facts of the case and that the defendant was entitled to its fees under the EAJA. *Id.* at 1248.

In so ruling, the *First Class Coach Co.* court held that defense counsel rates could be increased under the EAJA and awarded at the market rate. *See id.* at 1247 n. 4.  The court said, "[a]lthough the Equal Access to Justice Act (EAJA) provided a statutory maximum rate for counsel of $125 per hour, a rate of $225 per hour requested by class counsel in Fair Labor Standards Act (FLSA) litigation was justifiable due to the specialized area of the law and the attorney's expertise in that area. 28 U.S.C.A. § 2412(d)(2)(A); Fair Labor Standards Act of 1938, § 13(b)(1), 29 U.S.C.A. § 213(b)(1)." *Id.* at 1247 n. 4.

Here, as in *First Class Coach Co.*, based on the facts before the Court, the Secretary was not substantially justified in bringing and continuing to litigate this matter. Given the enormous monetary penalty at stake (in excess of $6,000,000) and the highly specialized area of the law involved, GGS necessarily turned to counsel with substantial experience in FLSA collective actions to vindicate its business practices.  Like counsel in *First Class Coach Co.*, Plaintiff's counsel Annette A. Idalski focuses her practice **exclusively** on the defense of labor and employment related matters, with a specific focus

on the defense of claims brought pursuant to the Fair Labor Standards Act ("FLSA") and state law equivalents. (Idalski Dec. ¶ 4.)[5]

More specifically, Ms. Idalski has practiced **exclusively** in the area of labor and employment defense since 1999 – or for 14 years – at a national labor and employment boutique firm (Elarbee) and subsequently in the labor and employment law sections of two large law firms (Hunton & Williams LP and Duane Morris LLP) until she was recruited to Chair the labor and employment group at Chamberlain Hrdlicka. (Idalski Dec. ¶ 4.)   Ms. Idalski has been listed as a "Top Attorney in Employment and Labor" in the Corporate Counsel Edition of Super Lawyers magazine, November/December 2010. (Idalski Dec. ¶ 4.)[6]   Ms. Idalski has a specialized practice serving as lead counsel in numerous FLSA wage and hour lawsuits throughout the United States, most of which include collective actions, as outlined in her declaration.  (Idalski Dec. ¶ 5.)

Here, Plaintiff's counsel's distinctive and specialized knowledge was critical to GGS prevailing in this matter.   GGS sued for and was successful in obtaining a declaratory judgment that the Secretary's determination that the independent contractor Gate Attendants were employees under the FLSA was erroneous and that the Gate Attendants were properly classified as independent contractors under the FLSA. Plaintiff's counsel's qualifications and that of the labor and employment associates on her team were necessary and could be obtained only at rates in excess of the statutory cap in this "identifiable practice specialty."  *See Pierce,* 487 U.S. at 572; *First Class Coach Co.,*

---

[5]   Ms. Idalski's Declaration detailing her experience with labor and employment defense in general and FLSA collective action defense in particular was submitted as Exhibit B in support of GGS's Motion for Attorney's Fees and is found at Docket No. 137-4.

[6]   Ms. Idalski  was named a "Georgia Super Lawyer," as published in Atlanta magazine and Georgia Super Lawyers magazine, March 2006, 2007, 2009, 2010, 2011, 2012 and was named one of "Georgia's Legal Elite," as selected by Georgia attorneys and published in Georgia Trend Magazine, December 2005, 2007, 2009, 2010, 2011, 2012.

*Inc.*, 219 F.Supp.2d at 1247 n. 4.  Accordingly, Plaintiff is entitled to an increase in the statutory capped hourly rate to reflect the market rate for work in this practice specialty, allowing Plaintiff to recover attorneys' fees in the amount of $901,592.50. (See Dkt. #137; Exhibit C, Supp. Idalski Dec. ¶18.) [7]

### 2. Cost-of-Living Adjustment

In the alternative, GGS is entitled to a cost-of-living adjustment with respect to its attorneys' fees incurred in connection with this litigation.   Such cost-of-living adjustments are expressly contemplated by the EAJA and are permitted as a reflection of the increase in the cost of living from the 1996 effective date of the statutory cap to the date the services were provided.  28 U.S.C. § 2412(d)(2)(A)(ii); *see also Doty*, 71 F.3d at 387; *California Marine Cleaning, Inc. v. U.S.*, 43 Fed.Cl. 724, 733 (1999).

To receive an adjusted award, the fee applicant must allege that the cost of living has increased as measured by the Department of Labor's Consumer Price Index ("CPI") and supply the court with CPI data.  *See Dalles Irrigation Dist.*, 91 Fed.Cl. at 705; *California Marine Cleaning, Inc. v. U.S.*, 43 Fed.Cl. at 733.  When requested, such an adjustment is within the court's discretion and "should be freely granted."  *See Baker*, 839 F.2d at 1084 (Fifth Circuit holding that, absent "unusual circumstances," an award of EAJA attorneys' fees should include a cost-of-living adjustment).

As is evidenced in the Supplemental Declaration of Annette A. Idalski [Supp. Idalski Dec.], attached hereto and incorporated herein as though fully set forth at length

---

[7] Federal courts have and will award far more substantial fee amounts against United States agencies under the EAJA and other statutes in order to redress unwarranted actions by such agencies against private defendants. *See Equal Employment Opportunity Commission v. CRST Van Expedited, Inc.*, No. O7-CV-95-LRR, Order on Motion for an Award of its Reasonable Attorney[s'] Fees, United States District Court for the Northern district of Iowa, attached as Exhibit D (awarding defendant attorneys' fees, expenses, and cost taxed against the EEOC in the amount of $4,694,442.14 pursuant to 42 U.S.C. § 200e-5(k)).

as Exhibit C, the March 1996 CPI as of the effective date of the current $125.00 per hour cap was 155.7.  (*See* Ex. C, Supp. Idalski Dec. ¶ 3.)  Pursuant to the Fifth Circuit's guidance in *Perales v. Casillas*, 950 F.2d 1066, 1076 (1992), requiring that "cost-of-living adjustments under the EAJA must be made to reflect the appropriate rate in the year in which the services were rendered," the arithmetic mean[8] of the Houston-Galveston-Brazoria, Texas, All Items CPI for the year of 2010 is 194.8; for the year 2011 is 200.7; for the year 2012 is 204.3; and for the year 2013 is 206.6.  (*See* Ex. C, Supp. Idalski Dec. ¶ 4.)

Dividing the mean CPI for each of the years during which GGS incurred attorneys' fees in connection with this litigation by the March 1996 CPI baseline yields percentage increases in the cost-of-living over the March 1996 baseline of twenty-five percent (25%) for 2010, twenty-nine percent (29%) for 2011, thirty-one percent (31%) for 2012 and thirty-three percent (33%) for 2013.  (*See* Ex. C, Supp. Idalski Dec. ¶ 5.)

Applying the appropriate cost-of-living percentage increases to the statutory rate of $125.00 per hour yields a cost-of-living adjusted hourly rate of $156.38 for 2010, $161.16 for 2011, $164.02 for 2012 and $165.87 for 2013.  (*See* Ex. C, Supp. Idalski Dec. ¶ 6.)  Accordingly, as a prevailing party seeking an award of attorneys' fees under the EAJA, where the relevant CPI data reveal percentage increases in the cost-of-living over the March 1996 effective CPI baseline during the time period encompassing the litigation at issue, GGS is entitled to recovery of its attorneys' fees at the hourly rate of

---

[8] *See, e.g.*, *California Marine Cleaning, Inc.*, 43 Fed.Cl. at 733-34 (adopting arithmetic mean of CPI data for time period encompassing litigation at issue for comparison with March 1996 CPI baseline in determining cost-of-living adjustment); accord *Doty*, 71 F.3d at 387 (adopting October 1981 CPI as baseline for cost-of-living adjustments under prior version of statute); *Chiu*, 948 F.2d at 722 (similar).

$156.38 for 2010, $161.16 for 2011, $164.02 for 2012 and $165.87 for 2013.  28 U.S.C. § 2412(d)(2)(A)(ii).

Multiplying the cost-of-living adjusted rate of $156.38 for the year 2010 by the hours billed in that same year yields a total of $35,420.07 in attorneys' fees incurred during 2010.  (*See* Ex. C, Supp. Idalski Dec. ¶ 7.)  Multiplying the cost-of-living adjusted rate of $161.16 by the hours billed in 2011 yields a total of $331,111.28 in attorneys' fees incurred during 2011.  (*See id.*)  Multiplying the cost-of-living adjusted rate of $164.02 by the hours billed in 2012 yields a total of $112,288.09 in attorneys' fees incurred during 2012.  (*See id.*)  Multiplying the cost-of-living adjusted rate of $165.87 by the hours billed in 2013 yields a total of $42,993.50 in attorneys' fees incurred during 2013. (*See id.*)  Therefore, the total attorneys' fees sought by GGS are $527,630.82.  (*See* Ex. C, Supp. Idalski Dec. ¶ 12.)

## G.    GGS is Entitled to "Other Expenses" Incurred in Connection with the Litigation.

In addition to attorneys' fees, § 2412(d) of the EAJA also provides for the recovery of "other expenses," which includes paralegal fees and travel expenses.  28 U.S.C. § 2412(d)(1)(A); *see also Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 589 (2008) (holding that "a prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates"); *Aston v. Sec'y of Health and Human Servs.*, 808 F.2d 9, 12 (2nd Cir. 1986) (holding that travel expenses "are reimbursable under the EAJA as reasonable 'fees and other expenses'").  Pursuant to § 2412(d)(2)(A), such paralegal fees and other expenses are based upon prevailing market rates for the kind and quality of the services provided.  *See Richlin Sec. Serv. Co.*, 553 U.S. at 577; *see also Dalles Irrigation Dist.*, 91 Fed.Cl. at 708.

16

As is evidenced in the Supplemental Declaration of Annette A. Idalski, attached hereto and incorporated herein as though fully set forth at length as Exhibit C, GGS relied upon the skills and services of certain paralegals in connection with this litigation. (*See* Ex. C, Supp. Idalski Dec. ¶ 8.) Specifically, GGS incurred a total of thirty four and seven tenths (34.7) hours of paralegal services in 2011 and a total of sixty seven and seven tenths (67.7) hours of paralegal services in 2012. (*See id.*) The prevailing market rate for paralegal services in the Houston, Texas area during the relevant time period was $105.00 per hour. (*See* Ex. C, Supp. Idalski Dec. ¶ 9.) Multiplying the total paralegal hours billed by the prevailing rate yields a total of $3,643.50 in paralegal fees incurred during 2011 and a total of $7,105.50 in paralegal fees incurred during 2012. (*See* Ex. C, Supp. Idalski Dec. ¶¶ 10-11.) Therefore, GGS incurred a total of $10,752.00 in paralegal fees during the course of this litigation.

As is also evidenced in the Supplemental Declaration of Annette A. Idalski, attached hereto and incorporated herein as though fully set forth at length as Exhibit C, GGS' attorneys incurred travel expenses in the amount of $32,962.67 in connection with this matter, and those expenses were billed to and paid by GGS. (*See* Ex. C, Supp. Idalski Dec. ¶¶ 10-11.) Such travel expenses were incurred over a period of nearly three (3) years and were reasonable and necessary in the prosecution of the claims upon which GGS prevailed in this action, as well as the defense of GGS from the claims asserted by the Secretary. (*See* Ex. C, Supp. Idalski Dec. ¶ 10-11.)

Accordingly, because GGS is a "prevailing party" under the EAJA and otherwise meets the requirements for a recovery of fees and other expenses in connection with this

litigation, GGS is entitled to an award of $10,752.00 in paralegal fees and an award of $32,962.67 in travel expenses. (*See* Ex. C, Supp. Idalski Dec. ¶ 13.)

**V.      CONCLUSION**

In light of its success on all significant questions at issue in this litigation, GGS qualifies as a "prevailing party" under § 2412(d).  Additionally, both the Secretary's prelitigation conduct and litigation position were without substantial justification both in fact and in law, and no special circumstances exist that would make an award of GGS's attorneys' fees unjust.  Finally, GGS timely filed its application for attorneys' fees under the EAJA within thirty (30) days of this Honorable Court's Final Judgment, and the competent evidence before this Honorable Court establishes that GGS's net worth did not exceed $7,000,000 and it did not employ more than five hundred (500) employees as of November 19, 2010.  For these reasons, GGS is entitled to an award of its attorneys' fees incurred in connection with this litigation and respectfully requests that this Honorable Court issue such an award pursuant to 28 U.S.C. § 2412(d).

Respectfully submitted this 9th day of August, 2013.

**CHAMBERLAIN HRDLICKA**
**WHITE WILLIAMS & AUGHTRY**

By:   */s/ Annette A. Idalski*
         Annette A. Idalski
         Texas Bar No. 00793235
         Federal I.D. No. 1130754
         191 Peachtree Street, 34th Floor
         Atlanta, GA  30303-1747
         Telephone:  (404) 588-3570

         Daniel D. Pipitone
         Texas Bar No. 16024600
         Federal I.D. 0294
         1200 Smith Street, 14th Floor
         Houston, TX 77002-4310
         Telephone: (713) 654-9670

*Counsel for Plaintiffs/Counter-Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| GATE GUARD SERVICES, L.P. | ) | |
| and BERT STEINDORF, | ) | |
| | ) | |
| Plaintiffs/Counter-Plaintiffs, | ) | Civil Action File |
| | ) | No. 6:10-cv-91 |
| v. | ) | |
| | ) | JURY |
| HILDA L. SOLIS, SECRETARY OF LABOR, | ) | |
| UNITED STATES DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

This is to certify that on this date I have electronically filed the foregoing GATE GUARD SERVICES, L.P'S SUPPLEMENTAL MOTION TO RECOVER ATTORNEYS' FEES and MOTION TO ENFORCE AWARD OF COSTS with the Clerk of Court via the CM/ECF system which will automatically send a copy of the same to:

UNITED STATES DEPARTMENT OF LABOR
Colleen B. Nabhan
Janice L. Holms
Office of the Solicitor
525 Griffin Street, Suite 501
Dallas, Texas 75202
nabhan.colleen@dol.gov

OFFICE OF UNITED STATES ATTORNEY
John A. Smith
800 N Shoreline Blvd., Suite 500
Corpus Christi, Texas 78401
john.smith@usdoj.gov

This 9th day of August 2013.

**CHAMBERLAIN HRDLICKA**
**WHITE WILLIAMS & AUGHTRY**

By: */s/ Annette A. Idalski*_____
Annette A. Idalski
Texas Bar No. 00793235