UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **GATE GUARD SERVICES L.P.** *et al.*, § | |
| § | |
| Plaintiff/Counter–Defendants, § | |
| § | |
| v. § | **CIVIL ACTION NO. V–10–91** |
| § | |
| **THOMAS E. PEREZ, Secretary of Labor,** § | |
| **United States Dept. of Labor,** § | |
| § | |
| Defendant/Counter–Plaintiff. § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Plaintiffs Gate Guard Services, L.P. and owner Bert Steindorf's (collectively "GGS") Supplemental Motion to Recover Attorneys' Fees (Dkt. No. 147), to which Hilda L. Solis,[1] Secretary of Labor, United States Department of Labor, (hereinafter "the DOL") has responded (Dkt. No. 148) and GGS has replied (Dkt. No. 149).

**I. Background**

On February 13, 2013, the Court granted summary judgment in favor of GGS in its Declaratory Judgment Action against the DOL; dismissed all claims by the DOL in its Fair Labor Standards Act (FLSA) Enforcement Action against GGS; and entered final judgment in favor of GGS and against the DOL. (Dkt. Nos. 135 & 136.) By written Memorandum Opinion & Order entered July 24, 2013, the Court denied GGS's Motion to Recover Attorneys' Fees (Dkt. No. 137) without prejudice, for reasons set forth *infra*. (Dkt. No. 146.)

GGS now re-urges its motion to recover the attorneys' fees that it incurred in the prosecution of its Declaratory Judgment Action and in the defense of the FLSA Enforcement Action. According to GGS, as the prevailing party, it is entitled to attorneys' fees under the

---

1. Pursuant to Federal Rule of Civil Procedure 25(d), Thomas E. Perez was automatically substituted as the party in interest for the former Secretary of Labor, Hilda L. Solis.

1

Equal Access to Justice Act because the DOL's actions, both during its administrative investigation and in the course of litigation, were taken without substantial justification. The facts relevant to GGS's motion were previously set forth at length in the Court's July 24, 2013 Memorandum Opinion & Order. *Gate Guard Services L.P. v. Solis*, 2013 WL 3873275 (S.D. Tex. Jul. 24, 2013).

## II. Legal Standard

The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, was enacted in response to concerns that persons "may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights." *Sullivan v. Hudson*, 490 U.S. 877, 883 (1989); *see also* H.R. Rep. No. 99-120 at 4 (1985). There are two distinct methods for a district court to award attorneys' fees under the EAJA.

Under the first method, the court is required to grant attorneys' fees to a prevailing party against the United States, unless there are special circumstances that make the award unjust or the government can show that it was substantially justified in its legal position. 28 U.S.C. § 2412(d)(1)(A); *Hyatt v. Shalala*, 6 F.3d 250, 253–54 (4th Cir. 1993).[2] Five criteria must be met to support an award of attorneys' fees pursuant to § 2412(d): (1) the applicant must be a "prevailing party" in a suit against the government; (2) no special circumstances can exist

---

2. Subsection 2412(d)(1)(A) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

making such an award unjust; (3) a fee application must be made within 30 days of final judgment and supported by an itemized statement of such fees sought; (4) a qualifying party, if a partnership, must not have had a net worth exceeding $7,000,000.00 or employed more than 500 employees at the time of filing of the litigation; and (5) the government's position must not have been "substantially justified." *See Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 158 (1990).

The EAJA further permits a court to award attorneys' fees to the prevailing party to the same extent it may award fees in cases involving other parties, whether by statute or common law. 28 U.S.C. § 2412(b).[3] This provision makes the federal government subject to the "bad faith" exception to the "American Rule" on attorneys' fees. *Baker v. Bowen*, 839 F.2d 1075, 1080, n.3 (5th Cir. 1988). The bad-faith exception allows an award of attorneys' fees where the party seeking the award can show that the government has acted in "bad faith, vexatiously, wantonly or for oppressive reasons." *Id.* at 1081.

As recognized by the Fourth Circuit in *Hyatt v. Shalala*, "The distinction between [Subsections 2412(b) and 2412(d)] is of considerable consequence in the calculation of amount of fees." 6 F.3d at 254. Subsection 2412(d) imposes a presumptive $125.00 per hour cap on any award, unless it is adjusted for a special factor or the cost of living. 28 U.S.C. 2412(d)(2)(A). Under § 2412(b), however, the court may use a market rate to determine attorneys' fees. *Hyatt*, 6

---

3. Subsection 2412(b) provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b).

F.3d at 254. Thus, § 2412(b) allows for attorneys' fees "that can greatly exceed the cap placed on a § 2412(d) award." *Id.* Another significant distinction between these two subsections is that § 2412(d) "requires parties to qualify under statutorily prescribed net worth maximums." *Maritime Mgmt., Inc. v. United States*, 242 F.3d 1326, 1332 (11th Cir. 2001) (citing 28 U.S.C. § 2412(d)(1)(C)(2)(B) (defining "party" for purposes of § 2412(d) by net worth)). Subsection 2412(b) is not limited in this respect. *Id.*

### III. Analysis

GGS previously moved for attorneys' fees solely under § 2412(b). By written Memorandum Opinion and Order entered July 24, 2013, the Court denied GGS's motion upon finding that the DOL's actions were not taken in bad faith. *Gate Guard Servs.*, 2013 WL 3873275 at *7–*8. However, the Court's Order further provided that "[w]hile the DOL's actions may not have constituted bad faith, the Court is not convinced that the DOL has shown that its actions were substantially justified. Thus, denial is without prejudice to refiling pursuant to 28 U.S.C. § 2412(d)." *Id.* at *8. GGS now moves for attorneys' fees under § 2412(d).

#### A. Is GGS a "prevailing party"?

"As a threshold matter, a plaintiff is a 'prevailing party' under the EAJA 'if he succeeds on any significant issue in litigation which achieves some of the benefit he sought in bringing suit.'" *Davidson v. Veneman*, 317 F.3d 503, 506 (5th Cir. 2003) (quoting *Sims v. Apfel,* 238 F.3d 597, 599–600 (5th Cir. 2001)) (internal alterations omitted). The parties do not dispute that GGS is a prevailing party in this action.

#### B. Do special circumstances exist that would make a fee award unjust?

The "special circumstances" provision of § 2412(d)(1)(A) is designed to prevent recovery when the party seeking its attorneys' fees has engaged in bad faith behavior and when equitable

4

considerations such as the doctrine of "unclean hands" would make an award of attorneys' fees unjust. *See*, *e.g.*, *Devine v. Sutermeister*, 733 F.2d 892, 895–96 (Fed. Cir. 1984); *Diamond Sawblades Mfrs. Coalition v. United States*, 816 F. Supp. 2d 1342, 1359 (Ct. Int'l Trade 2012). The DOL does not argue that an award of attorneys' fees would be unjust, nor is the Court aware of any circumstances that would make a fee award unjust.

### C. Was the fee application timely?

The EAJA requires that a fee application be made within 30 days of final judgment. 28 U.S.C. § 2412(d)(1)(B). A final judgment was entered in this case on February 13, 2013. (Dkt. No. 136.) On February 27, 2013, GGS timely filed its original Motion to Recover Attorneys' Fees pursuant to § 2412(b). In a Memorandum Opinion & Order entered July 24, 2013, the Court denied GGS's motion without prejudice and allowed GGS to supplement its original motion with regard to § 2412(d). *Gate Guard Servs., L.P.*, 2013 WL 3873275 at *8. Shortly thereafter, on August 9, 2013, GGS filed its Supplemental Motion to Recover Attorneys' Fees to provide the Court with additional evidence and briefing regarding GGS's entitlement to fees under § 2412(d).

The DOL argues in a footnote that "there was nothing for GGS to supplement given that its first filing had been previously denied," and GGS's motion should therefore be denied as untimely. (Dkt. No. 148 at 1 n.2.) GGS is correct that an argument raised in a footnote is insufficient and may be disregarded by the Court. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003) (citing *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.")). GGS is also correct that because its initial fee application was filed in a timely manner, its supplemental motion is also timely. *See Scarborough v. Principi*, 541 U.S. 401, 418–

5

19 (2004) (holding a timely-filed fee application under the EAJA may be amended after the 30-day filing period under relation-back doctrine to include allegation of government's lack of substantial justification, where the "amended application 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth' in the initial application'") (quoting FED. R. CIV. P. 15(c)(2)). *See also Bazalo v. West*, 150 F.3d 1380, 1383–84 (Fed. Cir. 1998) (amendment made after 30-day filing period cured fee applicant's initial failure to establish that its net worth did not exceed the individual maximum of $2,000,000.00).

Thus, the Court finds that GGS timely filed its fee application.

### D. Is GGS a "party" under § 2412(d)?

As recognized in Part II, *supra*, § 2412(d) provides for mandatory attorneys' fees if the position of the United States was not substantially justified and the prevailing party meets certain financial eligibility requirements. The Fifth Circuit has made clear that "[a] prevailing party is eligible for fees and expenses only if he meets the statutory definition of a party[.]" *Tex. Food Indus. Ass'n v. U.S. Dept. of Agric.*, 81 F.3d 578, 580 (5th Cir. 1996). For purposes of § 2412(d):

> (B) "party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed . . . .

28 U.S.C. § 2412(d)(2)(B). Thus, in order to recover attorneys' fees under § 2412(d), GGS must demonstrate that its net worth did not exceed $7,000,000.00 and it did not employ more than 500 employees as of November 19, 2010.

Neither the plain language of the EAJA nor the Fifth Circuit has specified the method of calculation required to show "net worth". Black defines "net worth" as "[a] measure of one's wealth, usually calculated as the excess of total assets over total liabilities." BLACK'S LAW

6

DICTIONARY (9th ed. 2009). Similarly, the Committee Report accompanying the EAJA and numerous circuit courts provide that net worth "is calculated by subtracting total liabilities from total assets." H.R. Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980); S. Rep. No. 96-253, 96th Cong., 1st Sess. 17 (1979); *accord, e.g.*, *Bolt v. Merrimack Pharm., Inc.*, 503 F.3d 913, 916 & n.2 (9th Cir. 2007); *United States v. Heavrin*, 330 F.3d 723, 732 (6th Cir. 2003); *Shooting Star Ranch, L.L.C. v. U.S.*, 230 F.3d 1176, 1178 (10th Cir. 2000).

GGS has offered evidence that its net worth on November 19, 2010 was $6,186,896.00. (Sedwick Decl., Dkt. No. 147, Ex. A ¶ 10.) Arthur James Sedwick, Jr., a third-party, independent CPA with the accounting firm RRS, based his calculation on a review and analysis of GGS's 2010 partnership income tax returns and a compiled financial statement for 2010 that he previously prepared during GGS's annual engagement of RRS in 2010. (*Id.* ¶¶ 4–7.) Schedule L of GGS's Form 1065 U.S. Return of Partnership Income for 2010 provides a detailed statement of GGS's total assets, including cash, land, buildings, and other depreciable assets, as well as GGS's liabilities. (Dkt. No. 147, Ex. A, Ex. 1, Sch. L.) The compiled financial statement contains Mr. Sedwick's report; GGS's 2010 Statement of Assets, Liabilities, and Partners' Capital; GGS's 2010 Statement of Revenues and Expenses; and GGS's 2010 Statement of Changes in Partners' Capital. (*Id.*, Ex. A, ¶ 6, Ex. 2.) These documents, in turn, include detailed balance sheets and list GGS's assets (including current and fixed assets) and liabilities (including allocated long-term debt and accrued liabilities). (*Id.*, Ex. A, ¶ 6, Ex. 2, Exs. B-D.)

GGS has also offered evidence that it had 37 employees as of November 19, 2010, based upon an analysis of the Internal Revenue Service W-2 Forms prepared for 2010 and payroll records for the month of November 2010. (Brown Decl., Dkt. No. 147, Ex. B ¶ 3.)

The DOL argues that GGS has not met its burden of establishing that its net worth was less than $7,000,000.00 in November 2010 because Mr. Sedwick did not apply generally

accepted accounting principles (GAAP) to determine GGS's net worth. Instead, Mr. Sedwick used a cash basis accounting method, which is not recognized under GAAP. According to the DOL, this alone is sufficient to reject GGS's documentation purporting to establish its net worth. The DOL further contends that the financial documents submitted by GGS in support of its net worth are "inherently unreliable" because they have not been audited, and the records are "scant and incomplete" because the DOL is unable to evaluate certain tax deductions GGS claimed in 2010. Finally, the DOL contends that because RRS has performed accounting work for GGS since GGS's inception, and Mr. Sedwick is an officer and shareholder of RSS, he "clearly . . . has personal interest in its continued financial success." (Dkt. No. 148 at 5–6.) As such, Mr. Sedwick's declaration should be disregarded as biased and self-serving.

The DOL cites a handful of decisions recognizing that GAAP applies to the net worth inquiry under the EAJA; however, none of the district court or court of appeals cases cited by the DOL considers whether a cash basis accounting method may be used. Instead, each case focuses mainly on whether the evidence provided would allow the court to calculate net worth by subtracting total liabilities from total assets. *See Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 167 (4th Cir. 2004) ("We [] hold that a district court is capable of determining an applicant's net worth based upon a sworn affidavit by the applicant's CPA, provided that the affidavit includes documentation of the applicant's liabilities and assets."); *Shooting Star Ranch, L.L.C.*, 230 F.3d at 1178 ("It is not possible to calculate net worth by subtracting total liabilities from total assets based merely on the accountant's [unverified and unsworn] letter."); *Fields v. United States*, 29 Fed. Cl. 376, 383 (1993) (finding fee application insufficient where plaintiff "submitted a hodge-podge of data, but has failed to submit balance sheet(s) reflecting *all* assets and liabilities, owned individually and in his business capacity, at the time this civil action was filed"); *cf. Am.*

8

*Pac. Concrete Pipe Co. Inc. v. N.L.R.B.*, 788 F.2d 586, 591 (9th Cir. 1986) ("It is unreasonable to conclude from this brief sketch of legislative history that Congress could have intended that generally accepted accounting principles would not apply. The financial statement of AMPAC, prepared in accordance with generally accepted accounting principles, shows a net worth that is less than the [then-]$5 million ceiling. Thus, AMPAC is not disqualified from the EAJA award on the basis of net worth . . . .").

The DOL cites a single order by a magistrate judge—which the DOL incorrectly states is the decision of a "district court judge"—that directly supports its claim that financial statements prepared using a cash basis accounting method cannot be used to determine net worth because this method does not comply with GAAP. *United States v. Prabhu*, 2007 WL 3119854, *3 (D. Nev. Oct. 23, 2007) (Leavitt, Mag. J.) (rejecting submission of financial statements utilizing cash basis accounting method as support for EAJA determination). However, one district court explicitly rejected the government's claim that a financial statement prepared using a cash basis accounting method cannot support a fee award under 26 U.S.C. § 7430(c)(4)(D), which cross-references the requirements set forth in the EAJA, after "plaintiff's accountant explain[ed] that the GAAP method is not appropriate for cash-basis tax payers," and "both methods of accounting are recognized as valid accounting methods by the American Institute of Certified Public Accountants ('AICPA')." *Steven N.S. Cheung, Inc. v. United States*, 2007 WL 174042, *2 (W.D. Wash. Jan. 17, 2007). Similarly, one opinion cited by the DOL explicitly found "no support for the government's argument that a movant must file 'the statement of an accountant consistent with generally accepted accounting principles before he is entitled to attorney's fees.'" *United States v. Heavrin*, 330 F.3d 723, 732 (6th Cir. 2003). The Court finds the *Cheung* and *Heavrin* opinions persuasive and further recognizes that it would be unnecessarily burdensome to

9

force GGS to incur the additional expense of recalculating its net worth under GAAP in order to show that it is entitled to fees in this case.

With respect to the DOL's remaining complaints, the DOL fails to cite any authority in support of its claim that the financial statements provided by GGS should be excluded because they were not audited. Similarly, the DOL fails to provide any support for its claim that GGS must provide documentation establishing the value of each asset it owns. Finally, there is absolutely no merit to the DOL's assertion that Mr. Sedwick's opinion is biased and self-serving simply because his accounting firm was compensated for its work. As GGS rightly states in its reply, it is difficult to fathom how any business could obtain impartial financial statements from any independent CPA without paying them.

The Court finds that GGS need only present sufficient evidence of its total assets and liabilities in order that the Court may verify its net worth on November 19, 2010, and GGS has sufficiently done so by submitting its 2010 partnership income tax returns and 2010 compiled financial statement, accompanied by the sworn declaration of an independent CPA. Because GGS has demonstrated that its net worth did not exceed $7,000,000.00 and it did not employ more than 500 employees as of November 19, 2010, GGS meets the statutory definition of a "party" under § 2412(d)(2)(B).

### E.  Was the DOL's position substantially justified?

As the Supreme Court stated in *Scarborough v. Principi*, "the required 'not substantially justified' allegation imposes no burden of proof on the fee applicant. It is, as its text conveys, nothing more than an allegation or pleading requirement." 541 U.S. 401, 414 (2004); *see also Pierce v. Underwood*, 487 U.S. 552, 567 (1988). "The burden of establishing 'that the position of the United States was 'substantially justified,' § 2412(d)(1)(A) indicates and courts have

uniformly recognized, must be shouldered by the Government." *Scarborough*, 541 U.S. at 415; *Pierce*, 487 U.S. at 567.

"The test of whether or not a government action is substantially justified is essentially one of reasonableness." *Knights of the Ku Klux Klan v. East Baton Rouge Parish Sch. Bd.*, 679 F.2d 64, 68 (5th Cir. 1982). "The government has the burden of showing that its position in every stage of the proceedings was substantially justified by demonstrating that its actions had a reasonable basis both in law and fact." *Baker v. Bowen*, 839 F.2d 1075, 1080 (5th Cir. 1988). The government's conduct must be substantially justified "both in its litigation position and its posture during the underlying administrative proceedings." *Id.*; *accord Blakley v. United States,* 593 F.3d 1337, 1341 (Fed. Cir. 2010) ("In the context of EAJA claims, we have held that the 'position of the United States' in judicial proceedings refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.'" (quoting *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995))); *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991) ("[T]rial courts are instructed to look at the entirety of the government's conduct."). This showing may be based on the government's decision to file and/or maintain the lawsuit or by demonstrating "an abuse of the judicial process in the method of prosecution." *S.E.C. v. Cuban*, 2009 WL 4544178, *2 (N.D. Tex. Dec. 4, 2009) (citing *Batson v. Neal Spelce Assocs., Inc.*, 805 F.2d 546, 550 (5th Cir. 1986)).

GGS first argues that, acting on behalf of the DOL and motivated by a desire to help his friend, Rapstine ignored proper procedure and concluded that GGS was in violation of the FLSA without fairly and thoroughly investigating this matter. As evinced by the email Rapstine sent another investigator just hours after the opening conference stating that he had let GGS managers "dig[] their own grave," Rapstine appeared to have made up his mind before the investigation

11

was even underway. Rapstine's supervisor, Ramirez, testified that before calculating back wages, it would be wise to first establish that the employer is covered under the FLSA so as not to waste time (Ramirez Dep., Dkt. No. 137, Ex. F at 100:4-15); however, Rapstine did not do this. Instead, Rapstine began calculating back wages immediately after the opening conference, before interviewing any gate attendants or service technicians beyond the initial three. Also unsettling is the fact that Rapstine destroyed all of his interview notes taken between July and November 2010 by shredding and/or burning them. The same supervisor testified that Rapstine should not have destroyed his notes. (*Id.* at 139:19-23.) After Rapstine's closing conference with GGS on October 4, 2010, he submitted his file to Ramirez, who testified that Rapstine again "did not follow the proper procedures" in presenting the $6 million penalty to GGS. (*Id.* at 32:4-9.) The proper procedure is to first address future compliance and then proceed with presenting the estimate of findings to the employer; however, Rapstine deviated from the DOL's Field Operations Handbook without permission to do so. Finally, after interviewing an additional 14 workers and reviewing Rapstine's investigation records after GGS filed its Declaratory Judgment Action, the DOL reduced its $6 million demand to $2 million, acknowledging that it erred by not excluding sleep and meal time from its initial demand. According to GGS, that the DOL would allow Rapstine to assess an erroneous penalty of more than $6 million against GGS—a penalty so severe it could have put the company out of business—without the proper checks and balances to ensure its correctness shows that the DOL's prelitigation conduct was not substantially justified.

GGS next argues that the manner in which the DOL conducted the litigation was unreasonable and unnecessary and caused GGS to incur significant attorneys' fees. For example, after being served with GGS's lawsuit, the DOL fought the transfer and consolidation of its later-

filed FLSA Enforcement Action with the Declaratory Judgment Action, despite the significant overlap between the cases. Once these matters were resolved and the Parties began discovery, Ms. Nabhan stonewalled GGS at the first deposition by objecting to nearly every question asked, forcing GGS to end the deposition and seek the Court's assistance in setting parameters for the DOL's conduct. The cancellation of Rapstine's deposition forced GGS to reschedule the deposition, which resulted in a duplication of travel costs and deposition preparation. Finally, the DOL repeatedly withheld evidence from GGS based on the government informant privilege. As a result, GGS was forced to file a motion to compel, which resulted in yet additional briefing and considerable expense to GGS. According to GGS, the aforementioned conduct was not substantially justified.

GGS next argues that the DOL was unable to present sufficient evidence on each of the five factors of the independent contractor/employee analysis. As a result, the Court found that three of the five factors in the analysis weighed in favor of independent contractor status, one factor was neutral, and only one factor weighed in favor of finding employee status. GGS further maintains that the DOL chose to ignore, hide, or mischaracterize facts contrary to its position, or to present only those facts that it found helpful. For example, with respect to the control factor, the DOL disregarded the testimony of its own investigators that there was no day-to-day supervision, as well as the testimony of numerous gate attendants who stated that they are not supervised and no one tells them how to do their job. The DOL further represented to the Court that the nature of the assignments made the relationship between GGS and the gate attendants permanent; however, the DOL's own evidence showed that over half of the gate attendants worked sporadic assignments that were on and off for 15 weeks or less with breaks in the assignments ranging from 1 to 9 months.

Finally, GGS complains that the DOL acted without substantial justification when it refused to dismiss the FLSA Enforcement Action after learning that the Army Corps of Engineers (ACE) uses the services of gate attendants at federal parks under similar circumstances and classifies these gate attendants as independent contractors.[4] Similarly, GGS complains that the DOL also chose to ignore the precedent of this Court in *Mack v. Talasek*, 2012 WL 1067398, *2 (S.D. Tex. Mar. 28, 2012), whereby the Court found that oilfield gate attendants were independent contractors under nearly identical circumstances.[5] Citing *Hyatt*, 6 F.3d at 255–56, GGS argues that the DOL's attempts to relitigate questions already decided by this Court are evidence that its position was not substantially justified.

The DOL responds that it was substantially justified in pursuing this action because it conducted an "extensive investigation" and provided the Court with 39 summary judgment exhibits supporting its contention that the gate attendants are employees. The DOL states that other courts have found security guards to be employees and cites a recent decision by the Texas Workforce Commission (TWC) finding that gate attendants were employees, in order to show that another body reached a different conclusion under "a very similar set of facts." (Dkt. No. 148 at 9-10 (citing *Loma Rentals, L.L.C.,* Case No. TD-13-076-1313, Tex. Workforce Com'n (Jul. 12, 2013)).) Finally, the DOL points out that the Court acknowledged there were "facts pointing in both directions" in its Memorandum Opinion and Order on the Parties' cross motions for summary judgment (Dkt. No. 135 at 22) and did not indicate in its decision that the DOL's position was unreasonable.

---

4. The DOL explains that it was unaware of the ACE program until summary judgment briefing in this action; however, GGS has offered evidence that it produced information related to the ACE program to the DOL in December 2011.

5. The DOL responds that it could not have known about the *Mack* decision at the start of this litigation because the final order in *Mack* was not issued until March 28, 2012. GGS notes that the Magistrate's Memorandum & Recommendation (M&R) that was substantially adopted by the Court was entered on February 18, 2011, just two days after the DOL filed the FLSA Enforcement Action. Still, the DOL could not have known that the Court would adopt Magistrate Johnson's M&R.

The DOL is correct that the Court previously stated that there were "facts pointing in both directions" in this case. This was somewhat of an overstatement by the Court, as there was only one fact weighing in the DOL's favor—that the job performed by the gate attendants does not require skill and initiative. The facts that the gate attendants: (1) are free to reject assignments without penalty; (2) receive no training on how to do their job; (3) work with no day-to-day supervision; (4) are authorized to hire relief workers; (5) have the ability to increase their profits or suffer a loss; (6) work on a temporary, project-by-project basis; (7) are not precluded from other work; and (8) enter into independent contractor agreements with GGS all supported a finding that the gate attendants are independent contractors. The Court also recognized that (9) it is industry custom for gate attendants to work as independent contractors under nearly identical circumstances in this region, and (10) the federal government itself, via the ACE, uses the services of gate attendants at federal parks and classifies these individuals as independent contractors. Under this set of facts, the Court is not satisfied that a reasonable person could think that the DOL's position that GGS's gate attendants are employees was correct. The *Loma Rentals* decision most recently cited by the DOL does not alter the Court's opinion on this matter, as the TWC went to great lengths to explicitly distinguish the facts of this case. *Loma Rentals, L.L.C.,* Case No. TD-13-076-1313 at *8.

The DOL further argues that if GGS is entitled to recover any attorneys' fees at all, it should be limited to those fees incurred after the Court's decision was issued in *Mack v. Talasek* on March 28, 2012. The Court disagrees. Had the DOL interviewed more than just a handful of GGS's roughly 400 gate attendants before presenting GGS with a $6,000,000.00 demand and filing its Enforcement Action against GGS, it would have known the gate attendants were not employees. Once discovery revealed the facts cited in the paragraph above, the DOL should have

15

abandoned this litigation. *See Environmental Defense Fund, Inc. v. Watt*, 722 F.2d 1081, 1086 (2d Cir. 1983) (citing *Ellis v. United States*, 711 F.2d 1571, 1576-77 (Fed. Cir. 1983) ("We find it incumbent upon the government to abandon its opposition to the other party as soon as it becomes apparent that its litigation stance is not substantially justified.")). The DOL failed to act in a reasonable manner both before and during the course of this litigation, and it continues to insist that the gate attendants are employees, despite overwhelming contradictory evidence.

For the aforementioned reasons, the Court finds that the DOL's position in this action was not substantially justified. GGS is therefore entitled to attorneys' fees under the EAJA.

### F. Is GGS entitled to a fee enhancement above the statutory rate?

The Court next turns to the question of the amount of fees GGS is entitled to collect from the DOL. Under the EAJA, "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).

#### 1. Limited Availability of Qualified Attorneys

The Supreme Court has explained that "the limited availability of qualified attorneys for the proceedings involved" refers to attorneys having "some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988). "Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* Thus, a case requires specialized expertise under the EAJA only when it requires "some knowledge or skill that cannot be obtained by a competent practicing attorney through routine research or legal experience." *Healey v. Leavitt*,

485 F.3d 63, 70 (2d Cir. 2007). The Fifth Circuit has recognized that, "[i]n a sense, every attorney practicing within a narrow field could claim specialized knowledge." *Perales v. Casillas*, 950 F.2d 1066, 1074 (5th Cir. 1992). As a result, "an award of fees based on the market rate is not justified unless 'the number of competent attorneys who handle cases in a specialized field is so limited that individuals who have possibly valid claims are unable to secure representation.'" *Abusadeh v. Chertoff*, 2008 WL 5273702, *9 (S.D. Tex. Dec. 17, 2008) (quoting *Perales*, 950 F.2d at 1078).

GGS's attorney, while indisputably experienced in the practice of labor and employment law, does not possess a distinctive knowledge or skill that could only be acquired apart from the routine practice of law. *See Pierce*, 487 U.S. at 572. Moreover, GGS has not shown that other individuals in this region have been unable to secure representation in similar cases. *See Perales*, 950 F.2d at 1078. Accordingly, GGS's request for a rate adjustment based on the limited availability of qualified attorneys is denied.

### 2. Cost-of-Living Adjustment

In the alternative, GGS argues that it is entitled to a cost-of-living adjustment with respect to its attorneys' fees.

Under the EAJA, the statutory rate of $125.00 per hour may be adjusted to reflect "an increase in the cost of living." 28 U.S.C. § 2412(d)(2)(A). The Fifth Circuit has recognized that such an adjustment is not required; however, it has held that Congress's intent is "that cost of living be seriously considered by the fee-awarding court." *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir. 1988).

The historical notes accompanying the EAJA indicate that the statutory rate was last increased in 1998, more than 15 years ago. *See* 28 U.S.C. § 2412 (Historical and Statutory

17

Notes). GGS has provided evidence showing that the cost of living has increased substantially since then, as measured by the DOL's Consumer Price Index (CPI). (Idalski Supp. Decl., Dkt. No. 149, Ex. C ¶¶ 3–4.) The DOL does not dispute the number of hours billed by GGS's counsel in this case, and its only argument against GGS's request for a cost-of-living adjustment is a statement in a footnote that GGS's request "should be denied." (Dkt. No. 148 at 12, n.10.) As stated *supra*, an argument raised in a footnote is insufficient and may be disregarded by the Court. *See Bridas S.A.P.I.C.*, 345 F.3d at 356 n.7.

Applying the appropriate cost-of-living percentage increases to the statutory hourly rate of $125.00 yields a cost-of-living adjusted hourly rate of $156.38 for 2010, $161.16 for 2011, $164.02 for 2012, and $165.87 for 2013. (Idalski Supp. Decl. ¶ 6.) Multiplying the cost-of-living adjusted hourly rate by the hours billed for each year yields a total of $521,812.94 in attorneys' fees sought by GGS [($156.38/hour x 226.5 hours = $35,420.07 in 2010) + ($161.16/hour x 2054.55 hours = $331,111.28 in 2011) + ($164.02/hour x 684.6 hours = $112,288.09 in 2012) + ($165.87/hour x 259.2 hours = $42,993.50 in 2013)]. (*Id.* ¶¶ 7, 12.)

The Court finds that GGS is entitled to a cost-of-living adjustment for the years 2010 through 2013 as calculated above, and the number of hours billed by counsel is reasonable given the complexity of this case. Accordingly, GGS is entitled to collect $521,812.94 in attorneys' fees from the DOL.

### G.  Is GGS entitled to "other expenses"?

In addition to attorneys' fees, the EAJA provides for the recovery of "other expenses," which includes paralegal fees and travel expenses. 28 U.S.C. § 2412(d)(1)(A); *see also Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 589 (2008); *Aston v. Sec'y of Health and Human Servs.*, 808 F.2d 9, 12 (2nd Cir. 1986); *Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689,

18

710 (Fed. Cl. 2010). Under § 2412(d)(2)(A), paralegal fees and other expenses are based upon prevailing market rates for the kind and quality of the services provided. *See Richlin Sec. Serv. Co.*, 553 U.S. at 577; *Dalles Irrigation Dist.*, 91 Fed. Cl. at 708.

GGS has presented evidence that it incurred a total of 34.7 hours of paralegal services in 2011 and 67.7 hours in 2012. (Idalski Supp. Decl. ¶¶ 10, 11.) The prevailing market rate for paralegal services in the Houston, Texas area during the relevant time period was $105.00 per hour. (*Id.* ¶ 9.) Multiplying the total paralegal hours billed by the prevailing rate yields a total of $10,752.00 in paralegal fees during the course of this litigation [($105.00/hour x 34.7 hours = $3,643.50 in 2011) + ($105.00/hour x 67.7 hours = $7,108.50 in 2012)]. The DOL does not contest that GGS is entitled to paralegal fees, nor does it contest the amount of paralegal fees requested. Accordingly, GGS is entitled to recover $10,752.00 in paralegal fees from the DOL.

GGS has also presented evidence that its attorneys incurred travel expenses in the amount of $32,962.67 in connection with this matter, and those expenses were billed to and paid by GGS. (Idalski Supp. Decl. ¶ 14.) The DOL claims that travel expenses are not recoverable under the EAJA; however, the caselaw provides otherwise. *See Aston*, 808 F.2d at 12 (holding that travel expenses "are reimbursable under the EAJA as reasonable 'fees and other expenses'"); *Dalles Irrigation Dist.*, 91 Fed. Cl. at 710 ("[T]ravel expenses are recoverable pursuant to EAJA provided the court is furnished with sufficient documentation of these expenses and the statutory criteria have been satisfied."). The Court accepts GGS's contention that such travel expenses, which were incurred over a period of nearly three years, were reasonable and necessary in the prosecution of GGS's Declaratory Judgment Action and its defense against the DOL's Enforcement Action. Accordingly, GGS is entitled to recover $32,962.67 in travel expenses from the DOL.

**IV. Conclusion**

For the reasons set forth above, GGS's Supplemental Motion to Recover Attorneys' Fees (Dkt. No. 147) is **GRANTED**. It is **ORDERED** that GGS shall recover from the DOL attorneys' fees in the mount of $521,812.94, paralegal fees in the amount of $10,752.00, and travel expenses in the amount of $32,962.67, for a total of $565,527.61.

**SIGNED** this 9th day of April, 2014.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE